2005-NMSC-027

119 P.3d 144

**STATE of New Mexico, Petitioner,**

v.

**Hon. Jay W. FORBES, District Judge, Respondent,**

and

**Ralph Rodney Earnest, Real Party in Interest.**

No. 29,111.

Supreme Court of New Mexico.

June 30, 2005.

Rehearing Denied Aug. 26, 2005.

Patricia A. Madrid, Attorney General, Steven S. Suttle, Assistant Attorney General, Albuquerque, NM, for Petitioner.

Patricia A. Madrid, Attorney General, David K. Thomson, Assistant Attorney General, Santa Fe, NM, for Respondent.

A.J. Thomas Sullivan, Little Rock, AR, Gary C. Mitchell, Ruidoso, NM, John Bigelow, Chief Public Defender, Sheila Lewis, Assistant Public Defender, Santa Fe, NM, for Real Party in Interest.

## OPINION

CHÁVEZ, Justice.

{1} On March 8, 2004, the United States Supreme Court issued *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d

177 (2004), holding that "[w]here testimonial evidence is at issue, ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68, 124 S.Ct. 1354. We applied this principle in *State v. Johnson,* 2004–NMSC–029, ¶¶ 2, 7, 136 N.M. 348, 98 P.3d 998. Respondent, Ralph Rodney Earnest (Earnest), who in 1985 was convicted of murder, conspiracy to commit murder, kidnaping, conspiracy to distribute a controlled substance, and possession of a controlled substance, filed a Petition for Writ of Habeas Corpus seeking a new trial based on the holding in *Crawford.* The facts and posture of Earnest's case present a unique reason for granting him a new trial on his convictions now over two decades old. In 1985 this Court, relying on existing United States Supreme Court precedent, reversed his convictions for the very rationale stated by the United States Supreme Court in *Crawford:* that the admission of a prior statement by an alleged accomplice violated Defendant's rights under the Confrontation Clause[1] because it deprived Defendant of meaningful cross-examination. *State v. Earnest,* 103 N.M. 95, 99, 703 P.2d 872, 876 (1985) (*Earnest I* ). However, our holding in *Earnest I* was vacated by the United States Supreme Court with instructions that we apply the reliability analysis in *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), a case decided more than one year after we decided *Earnest I. New Mexico v. Earnest,* 477 U.S. 648, 106 S.Ct. 2734, 91 L.Ed.2d 539 (1986) (*Earnest II* ). We subsequently applied the reliability analysis and affirmed Earnest's convictions. *State v. Earnest,* 106 N.M. 411, 411, 744 P.2d 539, 539 (1987) (*Earnest III* ).

{2} After a hearing on Earnest's habeas corpus petition, following *Crawford,* the district court concluded that *Crawford* did not announce a new rule of constitutional criminal procedure and that Earnest was entitled to its application. Accordingly, the district court granted Earnest's petition and issued a Writ of Habeas Corpus for the release of Earnest unless the State elected to retry

him. The State filed a Verified Petition for Stay of Order Granting Petition for Writ of Habeas Corpus with this Court. We treated the Petition as one for superintending control, entered an order staying the district court action pending further order of this Court, and set the matter for oral argument. We also recognize our jurisdiction under Rule 5–802 NMRA 2005. Because of the unique circumstances of Earnest's case, and our belief that the United States Supreme Court legal precedent at the time we decided *Earnest I* required the exclusion of the alleged accomplice statement, as *Crawford* suggests that it always has, we affirm the district court and remand for proceedings consistent with this opinion.

## PROCEDURAL HISTORY

■ {3} The events leading to Earnest's convictions were alleged to have occurred on February 11 and 12, 1982. During Earnest's trial, information from two eyewitnesses, Conner and Boeglin, was provided to the jury. Conner took an oath and testified that while he and Boeglin committed the crimes, Earnest was not involved. The prosecution was given a full and fair opportunity to cross-examine Conner and challenge the reliability of his testimony. Boeglin, however, refused to take an oath and testify, despite having been granted use immunity, and was held in contempt of court. Over objection of defense counsel, the trial court declared Boeglin unavailable and admitted a tape recording and transcript of a statement Boeglin gave officers the day of his arrest. In his statement, Boeglin admitted that it was he who attempted to cut the victim's throat but he went on to implicate both Conner and Earnest, stating Earnest shot the victim in the head. *Earnest III,* 106 N.M. at 412, 744 P.2d at 540. Unlike the prosecution, which had a full and fair opportunity to cross-examine Conner, Earnest was deprived of the opportunity to cross-examine Boeglin to challenge the reliability of his statement. Boeglin's unsworn statement was admitted to the jury as

---

1. The Confrontation Clause in the New Mexico Constitution, Article II, Section 14, mirrors the Confrontation Clause of the United States Constitution, Amendment VI, for purposes of our analysis in this case.

substantive evidence of Earnest's guilt. A jury found Earnest guilty of all charges.[2]

{4} On March 4, 1985, we reversed Earnest's convictions and remanded for a new trial, holding that Earnest's confrontation rights had been violated. *Earnest I,* 103 N.M. at 96, 703 P.2d at 873. We concluded that admission of this prior statement by the alleged accomplice "was highly prejudicial, violated defendant's confrontation rights, and deprived defendant of meaningful cross-examination," relying on *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) (holding that a confession of an alleged accomplice who implicated Douglas violated Douglas's right to confront and cross-examine the witness against him and was inadmissible because he did not have the opportunity to cross examine the alleged accomplice). *Earnest I,* 103 N.M. at 99, 703 P.2d at 876. We did not believe *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which held that hearsay statements are admissible if the statements bear adequate "indicia of reliability," applied since the statement at issue in *Roberts* was a statement at a preliminary hearing where Roberts had the opportunity to cross-examine the declarant. *Earnest I,* 103 N.M. at 99, 703 P.2d at 876. The State appealed to the United States Supreme Court. On June 27, 1986, the United States Supreme Court entered a *per curiam* decision which vacated *Earnest I* and remanded for "further proceedings not inconsistent with" *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), an opinion decided more than one year after the New Mexico Supreme Court decided *Earnest I.* *Earnest II,* 477 U.S. at 648, 106 S.Ct. 2734.

{5} On remand we interpreted the United States Supreme Court order as requiring us to give the State "an opportunity to overcome the weighty presumption of unreliability attaching to codefendant statements by demonstrating that the particular statement at issue bears sufficient 'indicia of reliability' to satisfy Confrontation Clause concerns."

*Earnest III,* 106 N.M. at 412, 744 P.2d at 540 (quoted authority omitted). We concluded that the accomplice statement at issue had sufficient indicia of reliability to satisfy the Confrontation Clause. *Id.* Thus, we held that the trial court had not erred in admitting the statement and affirmed Earnest's convictions. *Id.*

### Earnest is Entitled to a New Trial

{6} From *Earnest II* up until *Johnson,* New Mexico courts continually applied the *Roberts* reliability test ("indicia of reliability") to accomplice statements, regardless of whether there had been an opportunity to cross-examine. *See, e.g., State v. Desnoyers,* 2002–NMSC–031, 132 N.M. 756, 55 P.3d 968; *State v. Martinez–Rodriguez,* 2001–NMSC–029, 131 N.M. 47, 33 P.3d 267; *State v. Torres,* 1998–NMSC–052, 126 N.M. 477, 971 P.2d 1267. It is beyond dispute that since *Crawford,* the rest of the nation knows now what the New Mexico Supreme Court announced in 1985: under the Sixth Amendment, statements from an alleged accomplice to an officer are inadmissible unless the declarant is unavailable and the defendant had an opportunity to cross-examine the declarant. *See Crawford,* 541 U.S. at 68, 124 S.Ct. 1354.

{7} Whether Earnest should now benefit from the holding in *Crawford* initially turns on whether *Crawford* announces a new constitutional procedural rule. *State v. Mascarenas,* 2000–NMSC–017, ¶ 24, 129 N.M. 230, 4 P.3d 1221 ("An appellate court's consideration of whether a rule should be retroactively or prospectively applied is invoked only when the rule at issue is in fact a 'new rule.' "). In *Crawford,* the United States Supreme Court did not expressly state it was announcing a new rule. In *Johnson,* wherein we applied *Crawford,* we also did not state we were announcing a new rule. We analyze this issue by exercising our inherent power to decide whether rulings announce a new

---

**2.** In its decision regarding the habeas corpus petition, the trial court concluded that admission of Boeglin's statement was not harmless beyond a reasonable doubt, citing *Earnest I,* in which we concluded that the statement was highly prejudicial. *See Earnest I,* 103 N.M. at 99, 703 P.2d at

876. We agree with the trial court's conclusion. *See Johnson,* 2004–NMSC–029, ¶ 33 (where custodial testimonial statement offers the only direct evidence, but is contradicted by other testimony, admission of the non-crossed statement is not harmless beyond a reasonable doubt).

rule, and if so, whether the new rule is to be given prospective or retroactive application. *See State v. Ulibarri,* 1999–NMCA–142, ¶ 22, 128 N.M. 546, 994 P.2d 1164, *aff'd,* 2000–NMSC–007, 128 N.M. 686, 997 P.2d 818. In *Mascarenas,* we recognized the difficulty of determining when a case announces a new rule but looked to *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), for guidance:

> [W]e do not attempt to define the spectrum of what may or may not constitute a new rule for retroactivity purposes. In general, however, a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.

*Mascarenas,* 2000–NMSC–017, ¶ 24, 129 N.M. 230, 4 P.3d 1221 (quoting *Teague,* 489 U.S. at 301, 109 S.Ct. 1060).

■ {8} Applying the *Teague* analysis to this case, we conclude that as to the unique facts and procedural posture of Earnest's case, *Crawford* does not announce a new rule because the result was "dictated by precedent existing at the time" we decided *Earnest I. Teague,* 489 U.S. at 301, 109 S.Ct. 1060. To aid our analysis, it is significant that Earnest preserved his argument that admission of the accomplice statement to police officers without him having the benefit of cross-examination violated his constitutional right to confront his accusers. Relying on *Douglas,* we agreed with Earnest in 1985 and reversed his conviction; the United States Supreme Court then reversed our opinion, asking us to reexamine the admissibility of the accomplice statement based on a case it decided over fourteen months after we decided *Earnest I.* The three Justices who separately concurred in *Earnest II* wrote that in their judgment, *Douglas* was no longer good law in view of *Lee,* stating "[a]s *Lee v. Illinois* makes clear, to the extent that *Douglas v. Alabama* interpreted the Confrontation Clause as requiring an opportunity for cross-examination prior to the admission of a codefendant's out-of-court statement, the case is

no longer good law." *Earnest II,* 477 U.S. at 649, 106 S.Ct. 2734 (Rehnquist, J., concurring). The fact that the remaining six Justices did not join the concurrence by then-Justice Rehnquist suggests to us that *Douglas* remained good law. We believe *Crawford* reaffirmed this conclusion. *See Crawford,* 541 U.S. at 57, 124 S.Ct. 1354 (citing *Douglas,* the Court stated "[w]e similarly excluded accomplice confessions where the defendant had no opportunity to cross-examine."). In any event, it cannot be disputed that *Douglas,* which held that an accomplice statement was inadmissible unless the defendant had a right to cross-examine, was good law at the time we decided *Earnest I.*

{9} The New Mexico Supreme Court was correct to follow *Douglas,* which we believe the analysis in *Crawford* now confirms. To support its reasoning, the Court in *Crawford* detailed the history of a defendant's right to confront his accusers, underscoring the essential requirement in the common law of the opportunity to cross-examine one's accuser. *Crawford,* 541 U.S. at 42–50, 124 S.Ct. 1354. The Court believed the historical review of the common law supported two fundamental principles underlying the Sixth Amendment's Confrontation Clause: 1) the prohibition of the use of *ex parte* statements as evidence against the accused; and 2) that the Framers of the Sixth Amendment would not have allowed the admission of testimonial statements of a witness who did not appear at trial unless the witness was unavailable and the accused had a prior opportunity to cross examine the witness. *Id.* at 49, 53–54, 124 S.Ct. 1354.

{10} The *Crawford* Court analyzed its previous decisions and concluded "[o]ur cases have thus remained faithful to the Framers' understanding: Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59, 124 S.Ct. 1354. Of paramount significance is the United States Supreme Court's observation that it had historically excluded accomplice confessions where the defendant had no opportunity to cross-examine, citing to *Douglas,* the very case we relied on when we

initially reversed Earnest's convictions in 1985. *Id.* at 57, 124 S.Ct. 1354. Furthermore, the Court did not find *Lee* contrary to its holding that testimonial statements are admitted only when the declarant is unavailable and the accused had an opportunity to cross-examine, thus drawing into question the conclusion of the concurring Justices in *Earnest II. See id.*

{11} *Crawford* did note, however, that while the results of its decisions had generally been faithful to the above-stated principle, the same could not be said for its rationales. *Id.* at 60, 124 S.Ct. 1354. The Court found this was particularly true of the rationale used in *Ohio v. Roberts,* stating that *Roberts* conditioned "the admissibility of all hearsay evidence on whether [the evidence fell] under a 'firmly rooted hearsay exception' or [bore] 'particularized guarantees of trustworthiness.'" *Id.* at 60, 124 S.Ct. 1354 (quoting *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531). *Crawford* disavowed this rationale, criticizing *Roberts* for failing to distinguish hearsay that was *ex parte* testimony, and for allowing the admission of *ex parte* testimony upon a mere finding of reliability:

> Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability." ... Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined.

*Id.* at 61, 124 S.Ct. 1354.

{12} *Crawford* also discussed the various hazards associated with the *Roberts* reliability test. Not only is the reliability test unpredictable, *Crawford* noted, but it allows the

very statements the Confrontation Clause was intended to exclude, and courts find reliability in the very factors that make the statements testimonial. *Id.* at 63, 65, 124 S.Ct. 1354. To highlight the latter hazard, the United States Supreme Court noted that one court held that the fact that the declarant's statement was made to police while in custody made the statement more clearly against penal interest and therefore reliable. *Id.* at 63, 124 S.Ct. 1354 (citing *Nowlin v. Commonwealth,* 40 Va.App. 327, 579 S.E.2d 367, 371–72 (2003)). The same may very well be said about our reliability approach in *Earnest III. See Earnest III,* 106 N.M. at 412, 744 P.2d at 540 (holding that the accomplice's statement was reliable because it was given without a promise of leniency, was against his penal interest, was not blame-shifting, and there was independent evidence corroborating his description of certain events). The reliability of testimonials must be assessed "in the crucible of cross-examination" to avoid these hazards and remain faithful to the history of the Confrontation Clause. *Crawford,* 541 U.S. at 61, 124 S.Ct. 1354.

{13} In *Crawford,* therefore, the United States Supreme Court confirmed what the New Mexico Supreme Court announced in *Earnest I*—that a custodial statement by an alleged accomplice to a police officer is not admissible unless the declarant is unavailable and the defendant had an opportunity to cross-examine the declarant. Because Earnest did not have the opportunity to cross-examine Boeglin, the tape recording and transcript of his statement were inadmissible under our reading of United States Supreme Court precedent that existed at the time of *Earnest I,* which *Crawford* clarifies has always been a correct interpretation of the law. Granting Earnest a new trial is consistent with our responsibility "to do justice to each litigant on the merits of his own case." *Desist v. United States,* 394 U.S. 244, 259, 89 S.Ct. 1048, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting). Our decision is limited to the very special facts of this case, highlighted by the fact that the very law this Court applied to Earnest's case twenty years ago has now been vindicated, which entitles him now to the same new trial he should have received

back then. Accordingly, we affirm the district court, lift the stay, and remand for execution of the Writ of Habeas Corpus, affording the State the opportunity to retry Earnest.

## CONCLUSION

{14} Under the unique facts and procedural circumstances of this case, the district court is affirmed and this matter is remanded for execution of the Writ of Habeas Corpus, with the State having the right to decide whether to retry Earnest, in which case the district court shall consider conditions of release pending trial.

{15} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PAMELA B. MINZNER, and PETRA JIMENEZ MAES, Justices.

PATRICIO M. SERNA, Justice. dissents.

SERNA, Justice (dissenting).

{16} I respectfully dissent. This case involves a petition for writ of habeas corpus and whether Earnest's incarceration violates his federal constitutional rights, specifically his right of confrontation under the Sixth and Fourteenth Amendments. The United States Supreme Court has explained that "it is 'sounder, in adjudicating habeas petitions, generally to apply the law prevailing at the time a conviction became final than it is to seek to dispose of [habeas] cases on the basis of intervening changes in constitutional interpretation.' " *Teague v. Lane*, 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (quoting *Mackey v. United States*, 401 U.S. 667, 689, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., dissenting in part)) (alteration in original).

"Habeas corpus always has been a *collateral* remedy, providing an avenue for upsetting judgments that have become otherwise final. It is not designed as a substitute for direct review. The interest in leaving concluded litigation in a state of repose, that is, reducing the controversy to a final judgment not subject to further judicial revision, may quite legitimately be found by those responsible for defining the scope of the writ to outweigh in some, many, or most instances the competing interest in readjudicating convictions according to all legal standards in effect when a habeas petition is filed."

*Id.* (quoting *Mackey,* 401 U.S. at 682–83, 91 S.Ct. 1160 (Harlan, J., dissenting in part)). The writ is not designed "simply to review the record for errors of the trial court; rather, habeas corpus inquiry is directed to the fairness of the entire proceeding, and a writ will lie when violations of the petitioner's constitutional rights rendered the judgment void by depriving the court of its jurisdiction." *Manlove v. Sullivan*, 108 N.M. 471, 476 n. 3, 775 P.2d 237, 242 n. 3 (1989) (citation omitted).

{17} The majority, relying on *State v. Ulibarri*, 1999–NMCA–142, ¶ 22, 128 N.M. 546, 994 P.2d 1164, *aff'd*, 2000–NMSC–007, 128 N.M. 686, 997 P.2d 818, appears to treat the question in this case as whether, in the exercise of this Court's "inherent power," we should give retroactive effect to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). I respectfully disagree. This case involves an analysis of federal constitutional law, not, as in *Ulibarri*, state constitutional law. While it is within this Court's discretion to make our own rulings prospective or retroactive, it is within the discretion of the Supreme Court, and not the courts of New Mexico, to make the Court's interpretation of the Sixth Amendment in *Crawford* retroactive. I recognize that the majority limits its retroactive application of *Crawford* to the specific facts of this case and to this one habeas petitioner. Nevertheless, even for this one petitioner's claim of a violation of his federal constitutional rights, I believe we must defer to the Supreme Court's retroactivity analysis. This Court has not adopted the analysis in *Crawford* as a matter of independent state constitutional law. In resolving a federal constitutional claim, we are bound by *Crawford* as a matter of federal supremacy; the fact that we have done what is required of us and applied *Crawford* in our own cases does not transform the matter into an issue of state law or invest this Court with discretion over *Crawford's* retroactivity.

{18} The Supreme Court has stated that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague,* 489 U.S. at 310, 109 S.Ct. 1060. "Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system." *Id.* at 309, 109 S.Ct. 1060.

> New rules of procedure ... generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of " 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding."

*Schriro v. Summerlin,* 542 U.S. 348, 124 S.Ct. 2519, 2523, 159 L.Ed.2d 442 (2004) (quoted authority omitted).

{19} Under this analysis, federal and state courts have overwhelmingly concluded that *Crawford* is not retroactive because, under *Teague,* it creates a new rule of law and does not fall within the limited exceptions to prospectivity. *Murillo v. Frank,* 402 F.3d 786, 790 (7th Cir.2005); *Dorchy v. Jones,* 398 F.3d 783, 788 (6th Cir.2005); *Brown v. Uphoff,* 381 F.3d 1219, 1227 (10th Cir.2004), *cert. denied sub nom. Brown v. Lampert,* 543 U.S. 1079, 125 S.Ct. 940, 160 L.Ed.2d 822 (2005); *Mungo v. Duncan,* 393 F.3d 327, 336 (2d Cir. 2004), *cert. denied sub nom. Mungo v. Greene,* 544 U.S. 1002, 125 S.Ct. 1936, 161 L.Ed.2d 778 (2005); *Evans v. Luebbers,* 371 F.3d 438, 444 (8th Cir.2004) (en banc) ("[T]he *Crawford* Court did not suggest that this doctrine would apply retroactively and the doctrine itself does not appear to fall within either of the two narrow exceptions to *Teague v. Lane's* non-retroactivity doctrine."), *cert. denied sub nom. Evans v. Roper,* 543 U.S. 1067, 125 S.Ct. 902, 160 L.Ed.2d 800 (2005); *People v. Edwards,* 101 P.3d 1118, 1123 (Colo.Ct.App.), *cert. granted,* No. 04SC565, 2004 WL 2784662 (Colo.2004); *State v. Tarver,* 2005–Ohio–3119, 2005 WL 1463240, at *3 (Ohio Ct.App. June 20, 2005); *In re Markel,* 154 Wash.2d 262, 111 P.3d 249, 254 (2005) (en banc).

> It is obvious to us ... that *Crawford* establishes a new rule. It discards the framework that *Roberts* had adopted. True enough, ... *Crawford* did not say that it was overruling *Roberts;* it emphasized that the declarant in *Roberts* had been subject to cross-examination. But it assuredly (and explicitly) jettisoned the *Roberts* standard. All of the Supreme Court's decisions between *Roberts* and *Crawford* had applied that understanding, though some of the Justices had questioned whether it should be maintained.... A rule is "new" for retroactivity analysis unless it was dictated by earlier decisions. *Crawford* was not "dictated" by *Roberts* or *Lilly [v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999)]; it broke from them. That the break takes the form of a return to an older, less flexible but historically better grounded approach does not make it less a break. All constitutional decisions find their ultimate basis in texts adopted long ago—here in the Bill of Rights (1791) and their application to the states via the fourteenth amendment (1868). Judicial rhetoric routinely invokes older norms. This does not mean that there has been no "new rule" of constitutional criminal procedure since 1868.

*Murillo,* 402 F.3d at 790 (citations omitted).

{20} For purposes of Earnest's habeas petition, we apply the law prevailing at the time his conviction became final. Despite the majority's inclination to apply our analysis from *Earnest I,* Earnest's conviction was not final at that time; his case was still on direct review when we decided *Earnest III.* As a result, it is the law applied in *Earnest III* that is relevant. Because this Court was under a Supreme Court mandate to apply the analysis from *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), rather than *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), I believe

that our application of the law existing at the time could not be said to be unreasonable or in violation of Earnest's federal constitutional rights. Based on my conclusion that *Crawford* creates a new rule, which does not apply to Earnest's collateral attack on his conviction, his current incarceration also does not violate the federal Constitution. As a result, despite *Crawford's* change in the law, Earnest's incarceration is not illegal or unconstitutional within the meaning of Rule 5–802 NMRA 2005, and I believe there are no grounds for issuing the writ of habeas corpus.