# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    NO. 27,302

**JOE CARABAJAL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Ralph D. Shamas, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

Joel Jacobsen, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

Defendant appeals the district court's judgment and sentence, entered pursuant to a jury trial, convicting him on two counts of criminal sexual penetration of a child under the age of thirteen and one count of criminal sexual contact of a child under the age of thirteen. On appeal, Defendant raises the following issues that: (1) his trial counsel erred in multiple instances, that either individually or cumulatively establish a prima facie showing that he received ineffective assistance of counsel; (2) the district court erred by denying Defendant's motion for disclosure of medical records and records from the New Mexico Children, Youth and Families Department (CYFD); (3) Defendant was denied a fair trial when the State's expert was allowed to testify beyond her observations and concluded that the observed injuries of the alleged victims were the result of sexual penetration; and (4) insufficient evidence was presented to support his convictions. For the reasons discussed below, we are not persuaded that Defendant has established reversible error. Accordingly, we affirm.

**1.     Ineffective Assistance of Counsel**

**A.     Standard of Review**

> When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record. If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance.

*State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61.

> To establish a prima facie case of ineffective assistance of counsel, Defendant must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that Defendant suffered prejudice in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384 (internal quotation marks and citation omitted).

"If any claimed error can be justified as a trial tactic or strategy, then the error will not be unreasonable." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289; *see also Lytle v. Jordan*, 2001-NMSC-016, ¶ 43, 130 N.M. 198, 22 P.3d 666 ("On appeal, we will not second guess the trial strategy and tactics of the defense counsel." (internal quotation marks and citation omitted)). "A claim of ineffective assistance of counsel does not present an opportunity for hindsight review"; however,

we look at the totality of the evidence regarding representation, not just whether the strategy was successful. *State v. Reyes*, 2002-NMSC-024, ¶ 46, 132 N.M. 576, 52 P.3d 948 (internal quotation marks and citation omitted). With these principles in mind, we consider the following claims of ineffective representation made by Defendant.

**B. The Failure to Seek Severance of the Charges**

Defendant maintains that defense counsel was ineffective based on the failure to file a motion to sever the charges so that he would have separate trials for the two alleged victims, hereinafter referred to as C.C. and M.D. The State had charged Defendant with two counts of criminal sexual penetration involving C.C., and one count each of criminal sexual contact involving C.C. and M.D. Defendant contends that he satisfies both elements of the ineffective assistance claim because "there is no conceivable trial strategy for not moving to sever" and he was prejudiced by this inaction. We believe that the facts of this case and the defense strategy advanced by defense counsel indicate that there was a plausible, reasonable basis for trying all of the charges in a single trial.

Here, there is no contention that the charges were improperly joined in the first instance. *See* Rule 5-203(A) NMRA. Instead, Defendant claims that defense counsel

should have sought severance under Rule 5-203(C) which states, in pertinent part, as follows:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants by the filing of a statement of joinder for trial, the court may order separate trials of offenses, grant a severance of defendants, or provide whatever other relief justice requires.

In considering whether to seek severance of the charges in this case, defense counsel is presumed to know that the court's decision whether to grant a motion for severance is discretionary, "and one test for abuse of discretion is whether prejudicial testimony, inadmissible in a separate trial, is admitted in a joint trial." *State v. Jones*, 120 N.M. 185, 186, 899 P.2d 1139, 1140 (Ct. App. 1995); *see also State v. Ruiz*, 2001-NMCA-097, ¶ 11, 131 N.M. 241, 34 P.3d 630 ("A defendant is unfairly prejudiced when joinder allows the jury to consider evidence that would not otherwise be admissible under Rule 11-404(B) . . ., if the trials were severed."). We agree with Defendant's argument that a motion for severance likely would have been granted, and the initial impression is that defense counsel's inaction constituted a prima facie showing of ineffective assistance of counsel. *See State v. Gallegos*, 2007-NMSC-007, ¶¶ 19-36, 141 N.M. 185, 152 P.3d 828 (holding that it is an abuse of discretion to fail to sever charges where evidence pertaining to each charge would not be cross-admissible at separate trials).

This first impression, however, gives way after considering the defense theory that was advanced in this case as set against the evidence before the jury. As indicated by the district court's ruling directing verdict on the sole count involving M.D., her lack of specificity with respect to the time frame of the alleged abuse was fatal as to that charge. Although it is true, as noted by Defendant, that the jury was unaware of the reason for the dismissal, defense counsel could have plausibly anticipated the weakness of M.D.'s testimony for purposes of advancing his overall strategy. The defense strategy was that the victims, who are stepsisters, had trouble remembering the facts of the alleged abuse because the stories were not true. Defense counsel wanted the jury to believe that the inconsistencies and lack of specificity in the victims' stories were consistent with the view that C.C.'s mother told them to fabricate these allegations. Defense counsel maintained that C.C.'s mother had a clear motive for doing this. Because M.D.'s inability to provide a more specific time-frame was consistent with the overall fabrication theory, defense counsel had a plausible reason for allowing the charges to be brought together.

In his reply brief, Defendant in effect maintains that this strategy is wrong because the prejudicial effect of admitting the evidence relating to M.D. outweighs any benefit to the defense. Although it might have been a sounder strategy to seek

severance in this case, our review is limited to whether the strategy was plausible and rational. *See State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct. App. 1992). Here, defense counsel had emphasized Defendant's puzzlement as to why the victims would make these allegations and defense counsel offered the jury an answer to this question by alluding to the motivations of C.C.'s mother. We cannot conclude that it was irrational to attempt to undermine the more numerous and serious counts involving C.C. by including the allegations involving M.D. and her involvement in the alleged conspiracy.

**C.      Expert Witness**

Defendant claims that defense counsel was ineffective based on the failure to consult with or call an expert medical witness to rebut the State's expert, Dr. Karen Carson, the Esperanza House, Inc. S.A.N.E. examiner. Defendant argues that the "entire defense" depended on discrediting the victims' stories, rebutting Dr. Carson's testimony, and having the jury believe that the alleged abuse never occurred.

Our Supreme Court has expressly rejected the claim that a failure to introduce the testimony of an expert witness constitutes ineffective assistance of counsel per se. *See State v. Vigil*, 110 N.M. 254, 258, 794 P.2d 728, 732 (1990) ("We will not substitute our own judgment over trial tactics for the judgment of defense counsel

when it is not clear that the defendant was deprived of a meritorious defense because the judgment of defense counsel was without excuse or justification."); *see also Lytle*, 2001-NMSC-016, ¶ 43 (stating that on appeal, the appellate court will not second guess the trial strategy and tactics of defense counsel). We do not believe that the record before us is sufficient to support Defendant's contentions. Specifically, we cannot assume that any consultation and testimony from an expert would have been helpful. *See Roybal*, 2002-NMSC-027, ¶ 19 (stating that when an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record, and if the facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition). It is for defense counsel to assess whether a particular expert's testimony will be helpful, and without a record of the substance of any expert testimony, or whether an expert would have assisted in the defense's ability to cross-examine Dr. Carson, we will not second guess counsel's decision.

**D. Failure to Call an Important Fact Witness at Trial**

Defendant next claims that defense counsel should have called Dr. Marble, or should have introduced evidence through the testimony of Detective Yepis, concerning Dr. Marble's physical examination of C.C. Defense counsel, in his

opening statement, told the jury that Detective Yepis would refer to the fact that Dr. Marble did not find anything indicative of injuries to C.C.'s vaginal area. Dr. Marble was not called as a witness, and defense counsel did not elicit this information from Detective Yepis at trial. Defendant maintains that this was inconsistent with defense counsel's fabrication strategy.

As observed in the State's answer brief, defense counsel did not abandon the issue, but instead of eliciting the information in the same manner referred to in the opening statement, defense counsel read the following from Detective Yepis' report while cross-examining C.C.'s mother: "I heard from Dr. Marble that it did not appear like there was any trauma in [C.C.'s] vagina." We will not revisit counsel's decision to present this information to the jury in this manner. *See State v. Orosco*, 113 N.M. 789, 797, 833 P.2d 1155, 1163 (Ct. App. 1991) ("The decision whether to call a witness is a matter of trial tactics and strategy within the control of trial counsel."), *aff'd in part*, 113 N.M. 780, 788, 833 P.2d 1146, 1154 (1992).

**E.      Closing Argument**

Defendant contends that defense counsel was ineffective based on the failure to object to certain remarks made by the prosecutor during closing argument. These remarks consisted of repeated references to evidence and testimony concerning the

alleged abuse of M.D., even though that charge had been dismissed, and the following statement made by the prosecutor: "we are not trying to dump on [Defendant] and go for a home run. We haven't charged him with every conceivable crime, maybe, possibly committed. We haven't done that. We are trying to be very reasonable, very realistic."

With respect to the remarks related to M.D., we believe the decision not to object was consistent with the overall defense strategy that the victims had made up these allegations. Defense counsel could reasonably conclude that the jury would interpret the references to M.D. as an indication of the State's weak case with respect to C.C., because it had to rely on M.D.'s allegation, which had been dismissed. Indeed, defense counsel's closing argument referred to both victims, trying to interlock them in the jurors' minds for purposes of the fabrication theory and the alleged larger conspiracy being driven by Defendant's estranged wife.

With respect to the prosecutor's reference to the number of charges brought in this case, we agree with the State that defense counsel could have interpreted this as a comment on the different dates to which C.C. testified, facts that were not only in evidence but were specifically referred to by defense counsel in closing argument in an attempt to undermine C.C.'s credibility. Because the prosecutor's comments

alluded to evidence presented at trial and reasonably addressed a potential jury concern about why the limited number of charges did not comport with the number of allegations made, we are not persuaded that defense counsel's failure to object was error. *See State v. Taylor*, 104 N.M. 88, 94, 717 P.2d 64, 70 (Ct. App. 1986) (noting that remarks by the prosecutor must be based upon the evidence or be in response to the defendant's argument); *see also State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254 ("During closing argument, both the prosecution and defense are permitted wide latitude. . . .").

**F.    Cumulative Effect**

Defendant claims that the cumulative effect of counsel's errors establishes ineffective assistance of counsel. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807. However, when there is no error, "there is no cumulative error." *State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981 P.2d 1211. As indicated by our analysis above, we do not believe that defense counsel fell below the requisite standard of representation on any of the individual claims raised. It follows that they did not cumulatively add up to

prejudice Defendant sufficiently to constitute ineffective assistance of counsel or to deprive him of his right to a fair trial.

**2.      Medical and CYFD Records**

Defendant claims that the district court erred in denying his motion for disclosure of medical records pertaining to alleged gynecological problems and CYFD records allegedly relating to a prior Esperanza House investigation.  In its initial response to the motion, the district court indicated that it would conduct an *in camera* review of the medical records, and, pending review of those records, the motion would be denied with respect to the CYFD records.  The medical records were not released after the *in camera* review, and the issue of the CYFD records was not revisited.  As such, we cannot consider Defendant's issue as it pertains to the CYFD records because they were never made part of the record.  *See State v. Hunter*, 2001-NMCA-078, ¶ 18, 131 N.M. 76, 33 P.3d 296 ("Matters not of record present no issue for review.").

Defendant did not designate the sealed medical records on appeal, as required by Rule 12-212(A) NMRA.  "It is defendant's burden to bring up a record sufficient for review of the issues he raises on appeal."  *State v. Jim*, 107 N.M. 779, 780, 765 P.2d 195, 196 (Ct. App. 1988).  Nevertheless, this Court, on its own motion, ordered

the sealed records from the district court for our review. C.C. had an expectation of privacy in her medical records, and her records were confidential under both Rule 11-504 NMRA and NMSA 1978, Section 14-6-1 (1977). Defendant had argued that these records were necessary to develop evidence that C.C. had intermittent urinary tract infections and possible other gynecological problems. Defendant hoped that the records would help rebut Dr. Carson's testimony that C.C. had been penetrated. Based on our independent review, we conclude that the district court did not abuse its discretion in refusing to order disclosure of these records. *See State v. Desnoyers*, 2002-NMSC-031, ¶ 25, 132 N.M. 756, 55 P.3d 968 (observing that discovery rulings are reviewed under an abuse of discretion standard) *abrogated on other grounds in State v. Forbes*, 2005-NMSC-027, 138 N.M. 264, 119 P.3d 144. These records were not necessary for Defendant to explore and present to the jury the basic theory that C.C.'s physical injuries might have another etiology. With respect to Defendant's argument that the records might have been necessary to show prior sexual abuse and a resulting knowledge of adult sexual behavior, this claim relates to the CYFD records, which, as we have stated, are not subject to our review.

## 3. Dr. Carson's Testimony

Defendant contends that Dr. Carson's testimony was in violation of *State v. Alberico*, 116 N.M. 156, 861 P.2d 192 (1993). In that case, the Supreme Court ruled that an expert may give testimony regarding symptoms that the victim suffers that are consistent with sexual abuse. The expert may not testify that the symptoms were in fact caused by sexual abuse. *See id.* at 176, 861 P.2d at 212. Testimony that crosses this line vouches too much for the credibility of the victim and encroaches on the province of the jury to determine credibility. *See id.*

The portions of the testimony cited by Defendant support the conclusion that Dr. Carson did not cross the line established in *Alberico*. When asked if her findings relating to C.C. were consistent with sexual abuse, Dr Carson answered: "Yes. In my notes I wrote that [C.C.'s] exam is consistent with her history and that there is definite evidence of child sexual abuse." Although at first blush the reference to "her history" might appear problematic, we construe this as a reference to how the patient was presented to the medical provider, and not a comment vouching for C.C.'s credibility. In light of the fact that the prosecutor had limited the question to whether the findings were "consistent" with abuse, and that Dr. Carson's answer was framed within the concept of consistency as well, we believe that it was the sort of testimony expressly

14

permitted by *Alberico*. *Id.* at 175, 177-78, 861 P.2d at 211, 213-14. It follows that Dr. Carson's testimony that the physical evidence observed in M.D. was consistent with abuse did not cross the *Alberico* threshold.

**4.      Sufficiency of the Evidence**

Defendant challenges the sufficiency of the evidence to support his convictions. When reviewing a sufficiency of the evidence claim, we conduct a two-part test. First, "we must view the evidence in the light most favorable to the verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. Then we must "make a legal determination of whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994) (internal quotation marks and citation omitted). We do not re-weigh the evidence or substitute our judgment for the judgment of the fact finder as long as there is sufficient evidence to support the verdict. *See State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789. Sufficient evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25,

126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). We emphasize that we do not consider the merit of evidence that may have supported a different result. *See State v. Kersey*, 120 N.M. 517, 520, 903 P.2d 828, 831 (1995); *cf. State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (holding that contrary evidence does not warrant reversal because the jury is free to reject a defendant's version of events).

The sufficiency of the evidence is measured against the jury instructions, because they become the law of the case. *See State v. Smith*, 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct. App. 1986). To find Defendant guilty of Count One, criminal sexual penetration of a child, the evidence had to show that Defendant caused C.C. to engage in sexual intercourse on, about, or between November 8, 2004, and October 9, 2005. To find Defendant guilty of Count Two, criminal sexual penetration of a child, the evidence had to show that Defendant caused the insertion, to any extent, of his finger into the vagina of C.C., on, about, or between November 8, 2004, and October 9, 2005. To find Defendant guilty of Count Three, criminal sexual contact of a child, the evidence had to show that Defendant touched or applied force to the unclothed groin of C.C, or caused C.C. to touch the unclothed penis of Defendant, on,

16

about, or between November 8, 2004, and October 9, 2005. There is no dispute concerning the age element of the crimes.

Based on our review of the record, principally the testimony of C.C. and Dr. Carson, and looking at this evidence in the light most favorable to the State, we conclude that there is more than ample evidence to support the conclusion that the sexual abuse occurred. Perhaps recognizing that the evidence is sufficient in this respect—that the abuse took place—Defendant's argument on appeal focuses on whether the evidence was sufficient to show that the abuse took place in the charged time frame. We decline the State's invitation to consider the issue waived based on an alleged inadequate factual recitation in Defendant's brief-in-chief.

As indicated, the State had charged that these incidents occurred sometime between November 8, 2004, and October 9, 2005. At the time of the August 2006 trial, C.C. was a couple days shy of her ninth birthday and was about to enter fourth grade. The October 2005 date in the jury instructions refers to the date that C.C. first alerted her mother and authorities to the abuse. At trial, C.C. testified that the abuse occurred in second and third grade. She specifically remembered two dates, November 8 and 10, which the jury could reference back from October 2005 to place the incidents on November 8 and 10 of 2004. She testified that the third incident

17

occurred in the summer. Because C.C. had testified that the incidents occurred in second and third grade, the jury could reasonably conclude that the third incident occurred in the summer between second and third grade, or the summer of 2005. Therefore, we conclude that there was sufficient evidence to show that all three incidents took place between November 8, 2004, and October 9, 2005. To the extent that some of C.C.'s testimony was inconsistent with respect to the dates in question, this was a matter to be resolved by the factfinder, which in this case was the jury. *See State v. Roybal*, 115 N.M. 27, 30, 846 P.2d 333, 336 (Ct. App. 1992).

**CONCLUSION**

For the reasons set forth above, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Chief Judge**

_____

**JONATHAN B. SUTIN, Judge**

18