This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                     **NO. 29,211**

**JERRY LUCERO,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Abigail P. Aragon, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Francine A. Chavez, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**KENNEDY, Judge.**

    Defendant appeals his conviction for criminal sexual contact of a minor

(CSCM). He raises three issues on appeal, contending that: (1) a tape recording of a conversation that he had with another witness while he was incarcerated was improperly admitted; (2) the evidence was insufficient to support the verdict; and (3) he received ineffective assistance of counsel. For the reasons that follow, we affirm.

**BACKGROUND**

Defendant's conviction arises out of an incident that occurred in September 2007. Defendant, his ex-wife Helen, and Helen's seven year-old granddaughter (the Victim) drove to a church. When they arrived, the Victim was taking a nap in the back seat of the vehicle. She testified that while Helen was inside the church, Defendant awoke her by touching her genitals and buttocks underneath her underwear. The Victim's mother, the police officer who filed the incident report, and a safehouse interviewer also testified, all of whom indicated that the Victim had given consistent statements to them about the incident.

After the State rested its case the defense called Helen, who testified that she was only in the church briefly, that she could see Defendant and the vehicle from inside, that the Victim was still sleeping when she returned, and that the Victim did not behave strangely thereafter. Defendant also took the stand and denied that he had touched the Victim inappropriately.

On cross-examination, the prosecutor asked both Helen and Defendant whether

they had spoken with each other about the case over the telephone the night before. They denied specifically discussing various aspects of the case. After the defense rested, the prosecutor announced his intention to call a rebuttal witness who had not previously been identified: an employee from the detention center where Defendant remained in custody. The prosecutor explained that through this witness he intended to introduce a tape recording of a telephone conversation between Defendant and Helen that had taken place the night before. At that juncture, a recess was taken, during which Defendant reviewed the tape recording in its entirety. Thereafter, Defendant objected on grounds that the tape recording was more prejudicial than probative, insofar as it revealed that he was in custody. The objection was overruled and the recording was played for the jury, revealing that Defendant and Helen had in fact talked about the proceedings, including certain specific matters that they had earlier denied discussing.

Defendant was ultimately convicted of CSCM. This appeal followed.

**DISCUSSION**

**1.      Admission of the Recorded Conversation**

Defendant asserts that the recording of the conversation was improperly admitted at trial. He advances two arguments.

First, Defendant renews his argument concerning the probative value and the

prejudicial effect of the evidence in question. "The trial court is vested with great discretion in applying Rule 11-403 [NMRA] it will not be reversed absent an abuse of that discretion." *State v. Martinez*, 1999-NMSC-018, ¶ 31, 127 N.M. 207, 979 P.2d 718 (alteration original, internal quotation marks and citation omitted).

At tria, Defendant contended that the recording of the conversation was unduly prejudicial because it revealed that he was incarcerated during the trial proceedings. The State responded that the recording had substantial probative value for impeachment purposes based on discrepancies between its content and Defendant's testimony at trial. *See generally State v. Morales*, 2000-NMCA-046, ¶ 16, 129 N.M. 141, 2 P.3d 878 ("The Rules of Evidence permit a party to impeach the credibility of a witness with evidence that the witness made a statement which is inconsistent with the witnesses' trial testimony.").

Defendant's credibility was a critical issue. As such, the value of the statement as a tool for impeachment was significant. By comparison, the fact that Defendant remained in custody during the pendency of the trial proceedings had relatively minor prejudicial effect, particularly in light of the fact that it was never emphasized in any way by the prosecution. Under these circumstances, we conclude that the district court did not abuse its discretion in determining that the probative value of the statement outweighed its prejudicial effect. *See, e.g., State v. Peters*,

4

1997-NMCA-084, ¶ 38, 123 N.M. 667, 944 P.2d 896 (holding that no abuse of discretion occurred where evidence of the defendant's incarceration was admitted at trial for impeachment purposes, and where the reference was limited and without undue emphasis).

Second, Defendant advances an additional argument concerning the State's failure to disclose the recording prior to utilizing it for rebuttal at trial. We generally review both the election of remedies for discovery violations and the admission of rebuttal testimony for abuse of discretion. *State v. Ruiz*, 2007-NMCA-014, ¶ 49, 141 N.M. 53, 150 P.3d 1003 (filed 2006). However, because Defendant did not object on this basis below, Defendant advances this argument pursuant to the doctrine of fundamental error. *See State v. McDaniel*, 2004-NMCA-022, ¶¶ 7, 18, 135 N.M. 84, 84 P.3d 701 (observing that a defendant's challenges to late disclosures by the state were not preserved, and therefore reviewing for fundamental error only).

"The first step in reviewing for fundamental error is to determine whether an error occurred." *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192. "If that question is answered affirmatively, we then consider whether the error was fundamental." *Id.*

When a discovery violation is alleged, the following factors are considered: "'(1) whether the State breached some duty or intentionally deprived the defendant of

evidence; (2) whether the improperly non-disclosed evidence was material; (3) whether the non-disclosure of the evidence prejudiced the defendant; and (4) whether the trial court cured the failure to timely disclose the evidence.'" *McDaniel*, 2004-NMCA-022, ¶ 8 (citation omitted).

With regard to the first factor, Rule 5-501(A)(1) NMRA and Rule 5-505(A) NMRA establish a continuing duty to promptly disclose any statement by a defendant which comes within the prosecutor's possession, custody, or control. Insofar as the recorded conversation constituted a statement by Defendant, the prosecutor was required to disclose it. Although the record does not reflect precisely when the prosecutor obtained the statement, it appears to have taken place in advance of the rebuttal. Insofar as the prosecutor failed to disclose the statement as soon as he came into possession of it, a violation of the duty to disclose occurred. *See McDaniel*, 2004-NMCA-022, ¶ 10 (holding that the duty to disclose established by Rules 5-501(A) and 5-505(A) was not violated where disclosure occurred "as soon as" the prosecutor obtained the material in question).

Turning to the second factor, materiality is established upon a showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *McDaniel*, 2004-NMCA-022, ¶ 11 (internal quotation marks and citation omitted). This may be

6

accomplished either by demonstrating that the evidence would have been rendered insufficient to support the verdict, or by indicating how early disclosure of the statement would have changed the defense at trial. *See id.* ¶ 13.

Defendant has advanced an attack on the sufficiency of the evidence. However, as illustrated by *McDaniel* and discussed at greater length below, the fact that Defendant denied the allegations and presented a different account of events does not amount to a demonstration that the result of the trial would have been different if the statement had been disclosed earlier. *See id.* (rejecting a claim of materiality where the defendant simply denied the allegations and presented a different account of events).

Defendant has also suggested that the defense strategy would have been different if the statement had been disclosed earlier, "at least to the extent that the discrepancies between his testimony and the actual contents of the phone call would have been cured and would have provided no basis for the State to further impugn his credibility." Because Defendant does not explain how this "cure" would have been effectuated, we can only assume that some form of preparation for cross-examination is envisioned. Because this is a valid consideration we further conclude that the statement could be regarded as material. *See State v. Allison*, 2000-NMSC-027, ¶ 17, 129 N.M. 566, 11 P.3d 141 (quoting additional authority for the proposition that

information which would "clearly affect counsel's decisions . . . on the preparation of [the] defendant for cross examination" is "material to the defense") (internal quotation marks and citation omitted). The third factor, prejudice, depends upon an affirmative demonstration that the untimely disclosure adversely affected the defense. *See McDaniel*, 2004-NMCA-022, ¶ 14. As previously mentioned, credibility was a critical issue in this case. To the extent that the prosecutor's failure to promptly disclose the statement deprived Defendant of the opportunity to alter his strategy and thereby minimize the damage to his credibility, he was prejudiced. *See Allison*, 2000-NMSC-027, ¶¶ 18, 26 (holding that the untimely disclosure of a prior arrest prejudiced the defendant where credibility was critical to the defense, and where the prosecutor's conduct prevented the defense from altering its strategy). However, it is not clear precisely how Defendant could have avoided an attack on his credibility in this case.

As mentioned above, Defendant contends that he would have altered his trial strategy by preparing for cross-examination in such a way as to "cure" the discrepancies between his testimony at trial and the content of the recorded statement. We can only assume that this would have been accomplished by carefully reviewing the recording in an effort to ensure that Defendant accurately and truthfully answered the prosecutor's questions about the extent to which Defendant and Helen had discussed the trial proceedings. However, this approach would have presented a

different opportunity for the prosecutor to impugn Defendant's credibility, insofar as Defendant's admission to discussing the trial proceedings with another defense witness could have been characterized as an improper attempt to tailor their testimony to be consistent, or to otherwise address other evidence presented at trial. *See generally State v. Hoxsie*, 101 N.M. 7, 9, 677 P.2d 620, 622 (1984) (observing that the state has the right to inquire into and comment upon the credibility of defense witnesses, including by inference that the testimony was tailored to be consistent with other testimony), *overruled on other grounds by Gallegos v. Citizens Ins. Agency*, 108 N.M. 722, 731, 779 P.2d 99, 108 (1989). Insofar as Defendant's credibility was subject to attack regardless of the strategy pursued at trial, the prejudicial effect of the late disclosure upon the defense is questionable.

The fourth and final factor, curative action, concerns the form of remedy or sanction imposed by the trial court in response to the untimely disclosure. *Ruiz*, 2007-NMCA-014, ¶ 54. Because Defendant did not object on grounds that the prosecutor had failed to timely disclose the statement, no remedy or sanction was sought. Nevertheless, the defense was given the opportunity to review the taped conversation during a recess, and the prosecutor's use of the statement was limited to rebuttal. We regard this as a reasonable cure, particularly in light of Defendant's failure to request additional or alternative relief. *Compare McDaniel*, 2004-NMCA-

9

022, ¶¶ 16-17 (holding that an untimely disclosure was adequately cured where the use of the evidence in question was limited to rebuttal); *and Ruiz*, 2007-NMCA-014, ¶ 54 (observing that an untimely disclosure was adequately cured where a recess was granted in order to permit the defense to interview a surprise witness before he testified); *with Allison*, 2000-NMSC-027, ¶¶ 20-25 (concluding that a brief continuance was insufficient to cure a discovery violation relating to the disclosure of a prior arrest, where the prosecution was permitted both to use the arrest report for impeachment and subsequently to emphasize it in closing arguments, and where the defendant's motion for mistrial was denied).

In summary, applying the four *Mora* factors to the situation at hand yields equivocal results. Although the prosecutor appears to have violated the duty to promptly disclose and the evidence at issue may have been material, both the prejudicial effect of the untimely disclosure and the adequacy of the cure are fairly debatable.

At this juncture, the standard of review becomes a crucial consideration. Even if we assume that the admission of the statement into evidence was in error, we must still consider whether the error was fundamental. *Silva*, 2008-NMSC-051, ¶ 11. "Our fundamental error power is exercised only to correct injustices that shock the conscience of the court, a term that has been used in our precedents 'both to describe

10

cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused.'" *State v. Saiz*, 2008-NMSC-048, ¶ 59, 144 N.M. 663, 191 P.3d 521 (citation omitted).

As described at greater length in the following subsection, this is not a case involving indisputable innocence. Nor, ultimately, do we regard the untimely disclosure as sufficiently problematic to render the trial fundamentally unfair. We arrive at this conclusion partly because the disputed evidence was exclusively utilized in rebuttal, partly because the actual prejudice occasioned by the untimely disclosure is so debatable, and partly because the trial court took reasonable curative action. *Cf. State v. Dominguez*, 2007-NMSC-060, ¶ 23-28, 142 N.M. 811, 171 P.3d 750 (holding that the trial court did not err in permitting the prosecutor to call a witness who had not been named on the state's witness list, partly because her testimony was utilized only for rebuttal and partly because the prejudicial effect of her testimony was speculative); *State v. Desnoyers*, 2002-NMSC-031, ¶ 25, 132 N.M. 756, 55 P.3d 968 (rejecting a discovery-related challenge in a criminal case, where there was no affirmative showing that the alleged error was preserved and where the prejudice to the defense was purely speculative), *abrogated on other grounds by State v. Forbes*, 2005-NMSC-027, ¶ 6, 138 N.M. 264, 119 P.3d 144; *State v. Manus*, 93 N.M. 95,

11

103-04, 597 P.2d 280, 288-89 (1979) (rejecting a claim of reversible error based on the admission of rebuttal testimony by a witness who was not disclosed prior to trial, where the proceedings were briefly postponed to permit the defense to discover what he had to say), *overruled on other grounds by Sells v. State*, 98 N.M. 786, 653 P.2d 162 (1982); *Ruiz*, 2007-NMCA-014, ¶¶ 49-55 (rejecting a claim that a surprise rebuttal witness was improperly permitted to testify over objection, because the defense neither specifically claimed that early disclosure would have changed his defense at trial nor made a compelling showing of prejudice, and because a recess to permit an interview constituted an appropriate curative response under the circumstances).

Defendant relies heavily on *Allison* as support for his request for a new trial. However, *Allison* is readily distinguishable for several reasons. First, *Allison* involved the surprise use of inherently prejudicial material: the defendant's prior criminal record, specifically involving the concealment of his identity from a law enforcement officer. 2000-NMSC-027, ¶ 6. In this case, by contrast, Defendant has himself characterized the recorded statement as "essentially collateral" and addressed to "minor and non-material issues." Second, the defendant in *Allison* demonstrated that the attack on his credibility could have been readily avoided by pursuing a different strategy at trial. *Id.* ¶ 18. For the reasons previously stated, it is not at all clear that

Defendant could have altered his strategy to accomplish a similar result. Finally, and perhaps most importantly, the *Allison* Court was not reviewing for fundamental error. As a consequence, we conclude that *Allison* is not controlling.

In conclusion, while the prosecutor's conduct "is not to be commended," *Manus*, 93 N.M. at 103, 597 P.2d at 288, we cannot say that it "worked such a fundamental unfairness in [the d]efendant's trial that it impugned the integrity of our judicial system." *Silva*, 2008-NMSC-051, ¶ 15. We therefore reject Defendant's claim of fundamental error.

**2.      Sufficiency of the Evidence**

Defendant challenges the sufficiency of the evidence to support his convictions.

In reviewing the sufficiency of the evidence in a criminal case, we must determine whether substantial evidence exists to support a verdict of guilty beyond a reasonable doubt for every essential element of the crime at issue. *See State v. Rojo,* 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998). The evidence is reviewed in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences to uphold the conviction and disregarding all evidence and inferences to the contrary, to ensure that a rational jury could have found that each element of the crime was established beyond a reasonable doubt. *Id.*

Defendant was convicted of CSCM pursuant to NMSA 1978, Section 30-9-13(B)(1) (2003), which defines the offense in pertinent part as the unlawful and intentional touching of the intimate parts of a child under thirteen years of age.

To establish Defendant's guilt, the State called the eight year-old Victim as a witness. She testified that Defendant awakened her from a nap on September 3, 2007, by touching her genitals and buttocks underneath her clothes. The State also called the Victim's mother, the police officer to whom an incident report was made, and the individual who interviewed the Victim at the Santa Fe Rape Crisis Treatment Center. The Victim's statements to each of these individuals were consistent. We conclude that the foregoing evidence provides ample support for Defendant's conviction. *See, e.g., State v. Gipson*, 2009-NMCA-053, ¶¶ 12, 17, 146 N.M. 202, 207 P.3d 1179 (observing that the testimony of the minor victim and her mother was sufficient to support convictions for CSCM).

Defendant focuses on the lack of corroboration and physical evidence. However, neither of these conditions diminish the evidentiary sufficiency of the Victim's testimony. *See State v. Trujillo*, 60 N.M. 277, 283-84, 291 P.2d 315 (1955) (holding that corroboration is not required to support a conviction for CSCM); *State v. Landers*, 115 N.M. 514, 520, 853 P.2d 1270, 1276 (Ct. App. 1992) (observing that physical evidence is not required to support a conviction for CSCM). We further

14

acknowledge that Defendant testified to a different version of events, and that he presented other evidence tending to undermine various aspects of the State's case. "However, the jury was not obligated to believe [the d]efendant's testimony, to disbelieve or discount conflicting testimony, or to adopt [the d]efendant's view." *State v. Foxen*, 2001-NMCA-061, ¶ 17, 130 N.M. 670, 29 P.3d 1071 (citing *State v. Vernon*, 116 N.M. 737, 738, 867 P.2d 407, 408 (1993) (noting that the fact finder may reject a defendant's version of the incident in question)); and *State v. Johnson*, 99 N.M. 682, 685, 662 P.2d 1349, 1352 (1983) (observing that conflicts in the evidence, including conflicts in testimony among witnesses, are to be resolved by the trier of fact). We therefore reject Defendant's challenge to the sufficiency of the evidence.

**3.    Ineffective Assistance of Counsel**

Finally, Defendant claims to have received ineffective assistance of counsel.

To prevail on this argument, Defendant bears the burden of establishing a prima facie case of ineffective assistance. *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. In order to establish a prima facie case of ineffective assistance of counsel, Defendant must demonstrate that: (1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense. *See State v. Herrera*, 2001-NMCA-073, ¶ 36, 131 N.M. 22, 33 P.3d 22

15

(setting out the factors for a prima facie case of ineffective assistance).

Defendant bases his claim of ineffective assistance on defense counsel's alleged failure to investigate potential alibi witnesses. Although Defendant speculates that a more thorough investigation would have strengthened the defense, the record supplies no support for this assertion. This is a fatal deficiency. *See State v. Martinez*, 2007-NMCA-160, ¶¶ 20, 23, 143 N.M. 96, 173 P.3d 18 (rejecting a claim of ineffective assistance of counsel based in part upon failure to conduct pretrial interviews, where the defendant provided no specifics on how his defense would have been strengthened by more preparation); *State v. Telles*, 1999-NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845 (filed 1998) (rejecting a claim of ineffective assistance based on counsel's alleged failure to investigate, where the record was inadequate to support the claim). We therefore reject Defendant's ineffective assistance of counsel claim.

**CONCLUSION**

For the foregoing reasons, Defendant's conviction is affirmed.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

16

**WE CONCUR**:

_____

**LINDA M. VANZI, Judge**

_____

**ROBERT E. ROBLES, Judge**