Argued and submitted October 28, 2008, affirmed July 1, 2009

Walter BERNARDS
and Jerry Bernards,
as individuals
and derivatively on behalf of
Pioneer Ridge Apartments, LLC,
an Oregon limited liability company,
*Plaintiffs-Appellants,*

*v.*

SUMMIT REAL ESTATE MANAGEMENT, INC.,
an Oregon corporation;
Michael McKenna, Franklin Piacentini,
Dorothy Piacentini, Ann Haun,
and J. Guy Farthing,
trustee of the Farthing Living Trust,
*Defendants-Respondents,*

*and*

PIONEER RIDGE APARTMENTS, LLC,
an Oregon limited liability company;
and West Portland Construction, Inc.,
an Oregon limited liability company,
*Nominal Defendants-Respondents.*

Multnomah County Circuit Court
06-01-00508; A135831 (Control)

Walter BERNARDS
and Jerry Bernards,
as individuals
and derivatively on behalf of
Greenbrier Apartment Buildings, LLC,
an Oregon limited liability company,
*Plaintiffs-Appellants,*

*v.*

SUMMIT REAL ESTATE MANAGEMENT, INC.,
an Oregon corporation;
Michael McKenna; Franklin Piacentini;
Dorothy Piacentini; Thomas Haun;

and J. Guy Farthing,
trustee of the Farthing Living Trust,
*Defendants-Respondents,*

*and*

GREENBRIER APARTMENT BUILDINGS, LLC,
an Oregon limited liability company;
and LUN, LLC,
an Oregon limited liability company,
*Nominal Defendants-Respondents.*

Multnomah County Circuit Court
06-01-00509; A135833

213 P3d 1

Kevin H. Kono argued the cause for appellants. With him on the briefs were Christopher P. Koback and Davis Wright Tremaine LLP.

Marc D. Blackman argued the cause for respondents Summit Real Estate Management and Michael McKenna. With him on the brief were Kendra M. Matthews and Ransom Blackman LLP.

Joel A. Mullin argued the cause for respondents Franklin Piacentini, Dorothy Piacentini, Thomas Haun, Ann Haun, and J. Guy Farthing. With him on the brief were James N. Westwood and Stoel Rives LLP.

No appearance for respondents Pioneer Ridge Apartments LLC, West Portland Construction, Inc., Greenbrier Apartment Building LLC, and Lun LLC.

Before Landau, Presiding Judge, and Wollheim, Judge, and Schuman, Judge.

SCHUMAN, J.

**SCHUMAN, J.**

Plaintiffs are members of two limited liability companies (LLCs), each of which owns an apartment complex. They brought this derivative action in the name of the LLCs against the other members (member defendants), arguing that member defendants breached a duty to the LLCs by refusing to take legal action against the company that managed the apartments and one of its officers who had embezzled LLC funds.[1] Plaintiffs argue that the trial court erred in dismissing plaintiffs' complaints and, in the alternative, in dismissing them with prejudice. They also appeal the adverse award of attorney fees and costs. We affirm.

The amended complaints allege the following facts, which we supplement with the relevant procedural history and which, for purposes of reviewing the grant of defendants' motion to dismiss, we take as true. *Granewich v. Harding*, 329 Or 47, 51, 985 P2d 788 (1999). Greenbrier Apartment Buildings, LLC (Greenbrier) and Pioneer Ridge Apartments, LLC (Pioneer Ridge) are member-managed LLCs organized for the sole purpose of owning and operating a single apartment complex each. Plaintiffs Walter and Jerry Bernards are members of Greenbrier and Pioneer Ridge, together owning 20 percent interest in Greenbrier and 25 percent interest in Pioneer Ridge. Greenbrier and Pioneer Ridge entered into management agreements with defendant Summit Real Estate Management, Inc. (Summit), under which Summit agreed to manage and direct operations for both apartment complexes. In December 2004, plaintiffs discovered that Summit and one of its officers, defendant Michael McKenna, had embezzled funds from Greenbrier and Pioneer Ridge. In May 2005, defendant McKenna admitted that he had embezzled approximately $172,000 from Greenbrier and $160,000 from Pioneer Ridge.

Plaintiffs contacted the other members of Greenbrier and Pioneer Ridge, seeking their agreement to bring legal action against Summit and McKenna to recover the embezzled funds. That consent was required by Section 5.4(d) of

---

[1] Plaintiffs filed two complaints below, one on behalf of each LLC; the issues and relevant documents are identical and the cases are consolidated on appeal.

the LLCs' operating agreements, which provides, "Other than with the unanimous consent of the Members, no Member shall have authority * * * [t]o * * * resort to legal action for * * * the Company in any amount in excess of $5,000." Member defendants—J. Guy Farthing, Thomas Haun, and Franklin Piacentini—refused without explanation.[2]

On January 17, 2006, notwithstanding Section 5.4(d) of the operating agreements, plaintiff Walter Bernards filed complaints against Summit and McKenna, asserting direct claims for breach of contract and conversion. Defendants moved to dismiss the complaints under ORCP 21 A. Plaintiffs moved to amend the complaints in order to assert more detailed allegations but, before ruling on plaintiffs' motions, the trial court granted defendants' motions to dismiss. The court explained, first, that plaintiff Walter Bernards was not a real party in interest for purposes of a direct action because he was not a party to the management agreements between the LLCs and Summit; and, second, that if he intended to bring a derivative suit, "the majority members must be named defendants, as they are necessary parties." Plaintiffs do not dispute those rulings.

On June 23, 2006, plaintiffs filed amended complaints adding plaintiff Jerry Bernards and also adding derivative claims against member defendants for breach of contract. In the Greenbrier complaint, plaintiffs alleged that member defendants, "acting with gross negligence, breached their * * * contractual and fiduciary duties" to plaintiffs and to Greenbrier:

"a. by refusing to permit Greenbrier to resort to legal action against McKenna and Summit to recover the money McKenna and Summit embezzled from Greenbrier as heretofore alleged;

---

[2] In the Greenbrier case, plaintiffs did not seek consent from member Dorothy Piacentini but alleged that such a request would have been futile because she was "under the domination and control of her husband," member defendant Franklin Piacentini. Similarly, in the Pioneer Ridge case, plaintiffs did not seek consent from Dorothy Piacentini or Ann Haun, alleging futility because each was under the domination and control of Franklin Piacentini.

"b. by refusing to engage in activities that are necessary and appropriate to protect and enhance the assets of Greenbrier [and plaintiffs];

"c. by allowing McKenna and Summit to unjustly retain funds belonging to Greenbrier in an amount not less than $250,000.00;

"d. by permitting McKenna and Summit to improperly and illegally commingle the funds of Greenbrier with the funds belonging to another person or entity;

"e. by failing, neglecting and refusing to make a claim against Summit's surety bond to recover the said embezzled funds; and

"f. by generally failing to uphold the fiduciary duties owed to Greenbrier and the plaintiffs including the duty to act in good faith and to act with the care an ordinarily prudent person would exercise under similar circumstances."

The complaint also alleged that McKenna admitted embezzling approximately $172,000 from Greenbrier; that one of member defendants had told plaintiffs that he would not authorize legal action against McKenna and Summit "no matter how much money they had embezzled"; and that no demand had been made on Dorothy Piacentini because it would have been futile. The complaint regarding Pioneer Ridge was, for all relevant purposes, identical, except that it alleged that McKenna admitted embezzling approximately $160,000 from Pioneer Ridge.

Defendants Summit and McKenna moved to dismiss the complaints for "failure to state ultimate facts sufficient to constitute a claim," ORCP 21 A(8); member defendants moved to dismiss on the same ground, with prejudice. The gist of defendants' argument was that, in order to state a claim, plaintiffs had to allege facts showing or implying that member defendants had breached their fiduciary duties or otherwise failed to act "in good faith, on an informed basis, and in the best interests of the LLC[s]," and that plaintiffs' complaints did not do so. Plaintiffs, in response, argued that their complaints were adequate because they met the minimal requirements established by statute: it alleged that they had made a demand on member defendants "to obtain action by [them] * * * to cause the limited liability company to sue in

its own right, and either that the demand was refused or ignored or the reason why a demand was not made." ORS 63.801(2). According to plaintiffs, no allegation of wrong-doing was necessary. Further, they argued, even if such an allegation was necessary, the complaints alleged facts from which wrongdoing could be inferred, thereby defeating a motion under ORCP 21 A(8). Plaintiffs did not separately argue that, if the motion were granted, it should be *without* prejudice.

On April 6, 2007, the trial court dismissed plaintiffs' complaints with prejudice, concluding that plaintiffs had to allege facts showing that member defendants acted wrong-fully and that they had not done so. This appeal followed.

■■ In their first assignment of error, plaintiffs challenge the trial court's conclusion that their complaints failed to state a claim because they needed to allege wrongful conduct and failed to do so. "Whether the complaint states a claim is a question of law." *Hansen v. Anderson*, 113 Or App 216, 218, 831 P2d 717 (1992). For the reasons that follow, we agree with the trial court.

Plaintiffs' contention that they did not need to allege wrongful conduct derives from ORS 63.801(2). That statute provides, in part:

"Except as otherwise provided in writing in the articles of organization or any operating agreement, a complaint in a proceeding brought in the right of a limited liability company must allege with particularity the demand made, if any, to obtain action by the managers or the members who would otherwise have the authority to cause the limited liability company to sue in its own right, and either that the demand was refused or ignored [so-called 'demand refusal'] or the reason why a demand was not made [so-called 'demand futility'].* * *"

According to plaintiffs, the statute provides the necessary and sufficient elements of a complaint in a derivative action such as the ones at issue here. We disagree. For several reasons, we conclude that an allegation of either demand refusal or demand futility is necessary but not sufficient to state a derivative claim against members of a limited liability company; an allegation of facts sufficient to show that member

defendants acted in bad faith or that their actions constituted gross negligence, fraud, or willful or wanton misconduct is also necessary.

First, as member defendants point out,

> "Plaintiffs' notion would have a derivative action floating in free space, with a demand on company management being a substantive basis * * * for recovery from those managers of damages and attorney fees. The Member Defendants would be liable without Plaintiffs having to plead or prove the Member Defendants had done anything wrong."

Second, ORS 63.801(2) begins with the phrase, "Except as otherwise provided in writing in the articles of organization or any operating agreement, * * *." Thus, members of an LLC may vary statutory pleading requirements by contract. The members of the LLCs here have done so. Section 5.10 of the operating agreement provides,

> "Each Member * * * shall not be liable to the other Members or to the Company for honest mistakes of judgment or for action or inaction taken in good faith for a purpose reasonably believed to be in the best interest of the Company; provided that such mistake, action, or inaction does not constitute gross negligence, fraud, or willful or wanton misconduct.* * *"

Insofar as they allege claims against member defendants, plaintiffs' complaints allege breach of contract. The contract insulates member defendants against liability for honest, good faith mistakes unless they result from gross negligence, fraud, or willful or wanton misconduct. Thus, to state a claim for breach of contract against member defendants under ORS 63.801, as expressly modified by the terms of the operating agreement, plaintiffs needed to allege not only wrongful conduct, but wrongful conduct as described in the operating agreement.

Finally, we have held in a closely related context—derivative actions by shareholders against directors—that an allegation of seriously wrongful conduct is a necessary element of a derivative action. Shareholder derivative actions in the corporate context, like member derivative actions in the LLC context, are governed by statute, ORS 60.261(2), and, with the exception of the introductory clause allowing LLCs

to vary pleading requirements by contract, the two statutes are essentially identical.[3] Construing the corporate statute in *Crandon Capital Partners v. Shelk*, 219 Or App 16, 31, 181 P3d 773, *rev den*, 345 Or 158 (2008), we concluded that, "as a general matter, a party seeking to avoid the prelitigation demand requirement must plead facts sufficient to rebut the business judgment rule presumption." The "business judgment rule," we explained, "generally operates to bar judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." *Id.* The rule is a presumption that corporate directors act in the best interest of the corporation; the presumption can be rebutted by shareholders only if they can "articulate particularized facts showing that there is a reasonable doubt either that (1) the directors are disinterested and independent for purposes of responding to the demand or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id.* at 30. Quoting a Delaware case, we explained the reason for this requirement as follows:

> " 'By its very nature, the derivative action impinges on the managerial freedom of directors. Hence, the demand requirement * * * exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits. Thus, by promoting this form of alternative dispute resolution, rather than immediate recourse to litigation, the demand requirement is a recognition of the fundamental precept that directors manage the business and affairs of corporations.' "

*Id.* (quoting *Aronson v. Lewis*, 473 A2d 805, 811-12 (Del 1984), *overruled in part on other grounds by Brehm v. Eisner*, 746 A2d 244, 254 (Del 2000) (footnotes omitted)).

It is true that *Crandon Capital Partners* dealt with demand *futility* allegations in the context of *corporate*

---

[3] The LLC statute is set out above, 229 Or App at 363. The corporate statute provides,

"A complaint in a proceeding brought in the right of a corporation must allege with particularity the demand made, if any, to obtain action by the board of directors and either that the demand was refused or ignored or why a demand was not made. * * *"

*shareholder* derivative actions, and the present case involves a demand *refusal* allegation in the context of an action in the name of an *LLC*. Nonetheless, because the corporate and LLC statutes are nearly identical, we find no reason to conclude that one requires an allegation of wrongdoing and the other does not. Nor can we think of any reason why an allegation of wrongdoing would apply to demand futility and not to demand refusal. We therefore conclude that, unless plaintiffs' complaints alleged facts showing that member defendants' action in refusing to institute legal proceedings against Summit and McKenna was not the exercise of business judgment—or, in the more specific but fundamentally similar language of the LLCs' operating agreements, that member defendants' decision was taken in bad faith or amounted to gross negligence, fraud, or willful or wanton misconduct—the complaints did not state a claim.

Defendants appear to argue that, even if the complaints alleged facts showing gross negligence, breach of fiduciary duty, or some other wrongful conduct, the complaints would nonetheless fall short. According to that theory, Section 5.4(d) of the operating agreements altered or replaced the pleading requirements of ORS 63.801(2)—recall that the statute applies "[e]xcept as otherwise provided in writing in the articles of organization or any operating agreement." Further, Section 5.4(d) provides that, "[o]ther than with the unanimous consent of the Members, no Member shall have authority * * * [t]o * * * resort to legal action for * * * the Company in any amount in excess of $5,000." Thus, defendants reason, each member has unconstrained authority under the operating agreement to withhold consent and thereby block any other member from taking legal action on behalf of the LLC.

Section 5.4(d) cannot carry the freight with which defendants would load it. There is no logical connection between the premise that the consent of every member is a contractual prerequisite for legal action and the conclusion that every member has the unfettered authority to withhold consent. That is particularly true in light of the well-settled rule that the parties to a contract are bound by a requirement of good faith and fair dealing. *Best v. U. S. National Bank*, 303 Or 557, 561, 739 P2d 554 (1987). Even more to the point,

another provision of the operating agreement, Section 5.10 (as noted above), provides that a member *can* be held liable for action or inaction taken in bad faith, "gross negligence, fraud, or willful or wanton misconduct." The operating agreements, then, confirm rather than contradict the proposition that, although every member's consent is required before another member may take legal action, that consent cannot be withheld except for a valid business reason.

The trial court decided that plaintiffs' complaints did not allege ultimate facts from which a factfinder could conclude that defendants acted with gross negligence or in bad faith:

> "There are no ultimate facts alleged sufficient to demonstrate that [member defendants] acted wrongfully in any way. Stating that Piacentini and Haun refused to sue and 'did not offer an explanation' in no way shows that their decisions were wrongful. It merely indicates that they did not explain their reasons for not suing. Similarly, alleging that Farthing would not authorize a suit 'no matter how much money they had embezzled' is equally deficient. * * *"

We agree. It is true that, in reviewing the dismissal of plaintiffs' complaints, we accept as true all well-pleaded factual allegations, and we give plaintiffs the benefit of all reasonable inferences that can be drawn from those facts, in order to determine whether they state a claim. *Granewich*, 329 Or at 51. It is also true that the well-pleaded facts suggest, or raise a suspicion, that perhaps something improper might have been at work. We could speculate or conjecture that such was the case. More, however, is required.

Plaintiffs' complaints, as derivative actions, are conditioned by the business judgment rule. That means that they must state ultimate facts sufficient to overcome the presumption that member defendants acted for the benefit of the LLCs—that, in other words, they acted in bad faith, were grossly negligent, or engaged in fraud or willful or wanton misconduct. Further, the complaints are conditioned by the unanimity provisions in the LLCs' operating agreements. Plaintiffs had to allege facts demonstrating that *all* of the member defendants acted in bad faith, etc., because if even

one of them refused to proceed and had a valid business reason for doing so, the LLCs could not bring legal action against McKenna and Summit.

Most importantly, plaintiffs had to allege ultimate facts from which member defendants' seriously wrongful conduct is *inferable*, not merely a possibility. An inferable conclusion is more than a suspicion, a suggestion, a speculation, or a conjecture; a conclusion is inferable from facts if the conclusion can be logically deduced from the facts. *See Black's Law Dictionary* 793 (8th ed 2004) (inference is "[a] conclusion reached by considering * * * facts and deducing a logical consequence from them"). Alternatively, a complaint can allege so many facts suggesting a particular conclusion that the conclusion is inferable by induction. Here, plaintiffs allege only scant facts: McKenna embezzled large sums of money from the LLCs. Plaintiffs asked member defendants to bring legal action against him and his employer. Member defendants declined to do so and did not explain why. One member, defendant Farthing, said that he would not bring legal action regardless of how much money McKenna had embezzled.

The allegation regarding Farthing's statement is of no value to plaintiffs because, even if that allegation were sufficient to establish bad faith, plaintiffs still had to make sufficient allegations regarding the other member defendants. And the allegation that those member defendants refused to bring legal action does not, by itself, establish an adequate basis for inferring seriously wrongful conduct. To establish that foundation, plaintiffs would need to assert at least one fact that, if proved, would allow a reasonable factfinder to conclude that, more probably than not, no legitimate reason lay behind their refusal—for example, that plaintiffs had asked them to provide an explanation and they were evasive or recalcitrant (the complaint alleges only that they *did not* provide an explanation, not that they *refused* to provide one), or that they had a personal financial interest in McKenna's or Summit's solvency, or that they were driven by personal animus against plaintiffs due to some unrelated transaction, or that due to negligence they did not discover the embezzlement until it was too late to recover it. They have not done so.

Plaintiffs disagree, relying on *Gleason v. International Multifoods Corp.*, 282 Or 253, 577 P2d 931 (1978). They argue that *Gleason* establishes that, as a matter of law, if corporate directors (and, by extension, controlling LLC members) fail to bring legal action when the "right to recover is clear," then, as a matter of law, the refusal is *per se* either gross negligence or conclusive evidence of bad faith. Again, put another way, plaintiffs contend that *Gleason* provides the premise (refusal to pursue legal action in the face of a clear right to recover is always either gross negligence or evidence of bad faith) that, when combined with the alleged facts (member defendants refused to pursue legal action; their right to recover was clear because McKenna admitted embezzling LLC funds), compels the logical conclusion that member defendants acted wrongfully.

Plaintiffs overread *Gleason*. In that case, the plaintiffs brought a shareholder derivative action against the corporation for refusing to bring an action to recover corporate funds expended as part of a settlement. 282 Or at 255. The corporation's director submitted an affidavit asserting that the directors acted in good faith and for a valid business reason; the plaintiffs did not submit a response; the defendants moved for summary judgment; and the trial court granted the defense motion. *Id.* at 255-57. In affirming that decision, the Supreme Court quoted at length from 13 *Fletcher Cyclopedia Corporations* 131, § 5822 (Rev vol 1970):

" 'Refusal of majority stockholders or corporate officers to sue may constitute a noninterferable act of discretion, on the one hand, or a breach of trust or fraud on the other hand. It all depends upon the circumstances. Generally, where the right of the corporation to recover is doubtful, or the results, even if successful, would be of little or no net value, it would seem that the refusal to sue would be within the discretion of the board of directors or others managing the corporation, so that a minority stockholder would have no right to relief. On the other hand, *where the right to recover is clear, it would seem that the management has no right to refuse to sue, and that where it does so refuse, the minority stockholders may sue in the place of the corporation* * * *.

" 'The mere fact that a corporation has a cause of action for an injury does not always make it incumbent upon it to

> sue, any more than in the case of an individual. If, in the opinion of the directors or a majority of the stockholders, the best interests of the company do not require it to sue, it need not do so. *The matter ordinarily is within their discretion, and if they act in good faith, their refusal to sue violates no right of dissenting stockholders*, so as to entitle them to maintain a suit in their own behalf. * * *' (Emphasis added)."

*Gleason*, 282 Or at 259-60. The court then concluded that plaintiffs had neither alleged in their complaint nor presented affidavits "stating facts sufficient to show that the right of the corporation to recover" was "clear." *Id.* at 260.

 From the foregoing, we understand that the court did not hold that a corporation must in all circumstances bring legal action whenever the corporation clearly would be the prevailing party. The duty to sue does not arise, for example, when "success" would be of "little or no net value." *Id.* Thus, a corporation will have a clear right to recover only when the overall benefits of prevailing in the legal action outweigh the costs, including the opportunity cost of forgoing a settlement offer.[4] The plaintiffs in *Gleason* presented no facts from which a factfinder could infer that pursuing legal action would have led to "clear recovery" in that sense, and neither did plaintiffs in the present case. The trial court did not err in granting defendants' motions to dismiss for failure to state ultimate facts constituting a claim.

In their second assignment of error, plaintiffs argue that the trial court erred in dismissing the complaints with prejudice. Plaintiffs argue that "a judge should seldom dismiss a complaint *with prejudice* on a defendant's first

---

[4] This reading of *Gleason* and *Fletcher Cyclopedia Corporations* is in accord with the majority of cases from other jurisdictions and treatises. *See, e.g., Ashwander v. Valley Authority*, 297 US 288, 343, 56 S Ct 466, 80 L Ed 688 (1936) (Brandeis, J., concurring) ("[The business judgment] rule applies whether the mistake is due to error of fact or of law, or merely to bad business judgment. It applies, among other things, where the mistake alleged is the refusal to assert a seemingly clear cause of action, or the compromise of it."); *see also* Comment, *The Demand and Standing Requirements in Stockholder Derivative Actions*, 44 U Chi L Rev 168, 195-96 (1976) (noting that the "[m]ajority of cases * * * have refused to consider the merits of the cause of action asserted by the shareholders" and instead apply the business judgment rule); 2 Principles of Corp Governance § 7.10, Reporter's Note 4 (describing development of the rule over time).

pleading motion," *Dean v. Guard Publishing Co.*, 73 Or App 656, 660, 699 P2d 1158 (1985) (emphasis in original); that the motion that the trial court granted was the first to address a theory of derivative liability; that the trial court improperly relied on matters outside the pleadings to determine whether to dismiss with prejudice; and that dismissal with prejudice was erroneous because plaintiffs can replead with allegations that are sufficient to satisfy the elements of the claim. Defendants, in response, argue that plaintiffs failed to preserve that issue below and that we therefore should not consider it on appeal. ORAP 5.45(1); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991); *see also State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) ("[A] party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted."). We agree.

■ Plaintiffs objected to defendants' motion to dismiss, but made no mention of the motion to dismiss with prejudice. These are different types of errors triggering different standards of review on appeal: while we review the trial court's decision to dismiss the complaint for errors of law, *Hansen*, 113 Or App at 218, "[t]he decision to dismiss a case with or without prejudice is within the discretion of the trial judge, and we review only for manifest abuse of that discretion," *Bernard v. Gary J. Lekas, P.C.*, 124 Or App 416, 418, 862 P2d 564 (1993). We conclude that requiring plaintiffs to preserve both types of error below serves the purposes of the preservation requirement, that it was reasonably possible for plaintiffs to have preserved the issue of dismissal with prejudice, and that plaintiffs' "very *right* to appellate review of [that] issue is [plaintiffs'] to preserve or lose." *Peeples v. Lampert*, 345 Or 209, 223, 191 P3d 637 (2008) (emphasis in original). Because plaintiffs failed to preserve the issue of dismissal with prejudice below, we will not consider it on appeal.[5]

---

[5] We also note that trial courts enjoy "broad" authority in exercising their discretion to allow or preclude an amended pleading, *Temple v. Zenon*, 124 Or App 388, 390, 862 P2d 585 (1993); that, although the operative pleading was the first in which plaintiffs alleged a derivative claim, it was their third attempt to plead a sufficient cause of action; and that the trial court expressly disclaimed any reliance on material outside of the pleadings.

In their final assignment of error, plaintiffs argue that the trial court erred in awarding attorney fees and costs to defendants as prevailing parties. Because we affirm the trial court's rulings, we need not address that assignment of error.

Affirmed.