This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**


**STATE OF NEW MEXICO**,

    Plaintiff-Appellee,

v.                                     **NO.  28,115**

**RUBEN PERALTA**,

    Defendant-Appellant.


**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Stephen Pfeffer, District Judge**


Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ROBLES, Judge.**

Ruben Peralta (Defendant) appeals his convictions of second-degree murder, contrary to NMSA 1978, Section 30-2-1(B) (1994); tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003); and intimidation of a witness, contrary to NMSA 1978, Section 30-24-3(A)(3) (1997). He assigns six claims of error with sub-parts, which he avers should result in reversal of his convictions. Defendant argues that (1) the district court erred in admitting his post-arrest statements in violation of his rights under the Vienna Convention on Consular Relations (VCCR); (2) it was error to admit evidence of his prior bad acts of domestic violence; (3) he was entitled to jury instructions on self-defense and voluntary manslaughter; (4) the intimidation of a witness charge was based on an overly broad date range; (5) his conviction for second-degree murder lacked sufficient evidence; and (6) he received ineffective assistance of counsel at trial. e affirm on all claims.

## I.      BACKGROUND

On September 18, 2006, New Mexico State Police Agent Mitchell Maestas received information that a man by the name of Donald Moe was claiming that the voice of God was telling him the location of a human body and telling him to call the police. A subsequent law enforcement investigation on Moe's mother's property did,

in fact, reveal the body of an unknown victim. The body was located in what had been a hole dug on the property for drainage of a washing machine. Moe testified that, sometime in 2002, Darla Trujillo contacted him and his wife and told them that there had been an incident on the property. Trujillo, a friend of Moe's daughter, Angela, occasionally stayed on the property in question. In 2002, Defendant and Angela, who have four children together, were living on the property in one of two mobile homes. Also staying on the property, either temporarily or sporadically, was an individual by the name of Chino and another man named Rigo Camacho, who was Trujillo's boyfriend. On the day after hearing from Trujillo in 2002, Moe and his wife went to the property and looked for a dead body. None was found. Four years later, as Moe was walking to his mother's house, "a voice" told him to go to his neighbor's house, ask to borrow the phone, call the police, and tell them that there was a body in the drainage hole. Moe testified that when he and his wife searched the property in 2002, he simply did not look in the drainage hole.

As a result of Agent Maestas's investigation, Defendant was arrested in Kansas where he was residing with Angela and their children. New Mexico authorities interviewed Defendant in English and Spanish after informing him of his Miranda rights and obtaining a signed waiver. Defendant initially denied having any knowledge about the body. However, as the interview progressed, Defendant

eventually stated that he and Camacho helped hide the body in the hole and that Chino was the one responsible for the murder. Contrary to Defendant's story, Angela made statements to investigators that Defendant and Camacho had participated in the killing with Chino. Subsequently, Defendant and Camacho were tried together and charged with conspiracy, tampering with evidence, intimidation of a witness, and second-degree murder. The conspiracy charges were dismissed by directed verdict and Camacho was convicted only of tampering with evidence. Further facts relevant to this Opinion will be developed as needed.

## II. DISCUSSION

Defendant's appeal raises six issues with sub-parts that we address in turn. Because we conclude that there was no error below, we affirm Defendant's convictions.

## A. Post-Arrest Statements

Defendant, a citizen of Honduras, had been living in the United States for approximately sixteen years. His co-defendant, Camacho, is a citizen of Mexico. On appeal, Defendant asserts that the district court erred in admitting his post-arrest statements to the authorities in violation of the VCCR and, in the alternative, the jury should have been instructed that his statements were obtained in violation of the VCCR. Additionally, Defendant advocates for a review of the voluntariness of his

statements under the standard applied to children and argues that his statements should be suppressed under the Treaty of Guadalupe Hidalgo. We address each of these arguments.

Review of suppression motions requires an examination of the application of the law to the facts, which are viewed in a light most favorable to the prevailing party. *State v. Juarez*, 120 N.M. 499, 502, 903 P.2d 241, 244 (Ct. App. 1995). Factual determinations are reviewed under a substantial evidence standard while legal conclusions are reviewed de novo. *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. Claims of error that are based on the district court's failure to give a jury instruction present a mixed question of fact and law. *State v. Ramirez*, 2008-NMCA-165, ¶ 4, 145 N.M. 367, 198 P.3d 866, *cert. denied*, 2008-NMCERT-011, 145 N.M. 531, 202 P.3d 124.

**1.    The VCCR**

"The VCCR is a multilateral treaty signed by more than 100 nations." *State v. Martinez-Rodriguez*, 2001-NMSC-029, ¶ 7, 131 N.M. 47, 33 P.3d 267, *abrogated on other grounds by State v. Forbes*, 2005-NMSC-027, 138 N.M. 264, 119 P.3d 144. Ratified by the United States in 1969, it contains seventy-nine articles that concern consular officers and their rights, functions, privileges, and immunities. *Id*. Defendant argues, and the State admits, that he was not advised that he could confer

with consulate officials after his arrest as provided by Article 36 of the VCCR. *See* VCCR, art. 36(1)(b), Apr. 24, 1963, 21 U.S.T. 77, 100-01 ("[I]f he so requests, the competent authorities of the receiving [s]tate shall, without delay, inform the consular post of the sending [s]tate if, within its consular district, a national of that [s]tate is arrested[, t]he said authorities shall inform the person concerned without delay of his rights under this sub-paragraph[.]"); art. 36(1)(c) ("[C]onsular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation."). Before trial, Defendant filed a motion for suppression, arguing that because his interrogating officers did not advise him of his right to confer with a consulate official, he was entitled to suppression of his statements. The motion was denied.

On appeal, Defendant concedes that the VCCR does not mandate suppression or any other specific remedy, and implementation of the treaty is left to domestic law. *See* VCCR, art. 36(2) ("The rights referred to in . . . this Article shall be exercised in conformity with the laws and regulations of the receiving [s]tate."). The United States Supreme Court has held that although our nation is a signatory to the treaty, application of the exclusionary rule for violation of Article 36 would be an extraordinary remedy. *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 346-48 (2006). As that Court noted, a failure to inform a defendant of his Article 36 right to confer

with his consulate is unlikely to produce a coerced or unreliable confession that would require suppression under the exclusionary rule. *Id*. at 349. However, a defendant can raise an Article 36 violation "as part of a broader challenge to the voluntariness of his statements to police." *Id*. at 350.

On appeal, Defendant has changed his argument from one that advocates for suppression to be considered as a remedy for failure to advise of the VCCR rights to one that argues that the district court should have considered Defendant's claim within the broader challenge of the voluntariness of his statements. We observe that Defendant never challenged the voluntariness of his statements. While it is true that Defendant requested a hearing on the suppression of his statements, a request for a hearing is not an allegation that his statements were coerced or somehow the product of an involuntary action.

In New Mexico, the State has the burden to make a prima facie showing of voluntariness, which requires an establishment by preponderance of the evidence that a confession was not extracted "by fear, coercion, hope of reward or any other improper inducement." *State v. Tindle*, 104 N.M. 195, 198, 718 P.2d 705, 708 (Ct. App. 1986). Nevertheless, the State is only required to demonstrate voluntariness if there is a question of voluntariness. *See State v. Soliz*, 79 N.M. 263, 265-66, 442 P.2d 575, 577-78 (1968) (noting that the state must show voluntariness when the question

6

is raised by the defense at the time of the admission of the confession).  Defendant's argument below was based on the authorities' failure to inform him of his right under the VCCR to communicate with the Honduran consulate.  Because we do not view a general request for a suppression hearing as being a specific challenge to the voluntariness of statements, we conclude that this issue was not preserved.  *See Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 50, 146 N.M. 698, 213 P.3d 1127 ("The primary purposes for the preservation rule are[] (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the district court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue."), *cert. granted*, 2009-NMCERT-007, 147 N.M. 363, 223 P.3d 360.

**2.      Jury Instruction on the VCCR**

        Defendant states that the district court should have granted his request for a jury instruction that his post-arrest statements were obtained in violation of the VCCR.  He argues that allowance of such an instruction would have informed the jury and allowed them to give his statements the "appropriate weight" during their deliberations.  Citing to *Sanchez-Llamas*, Defendant suggests that the United States

Supreme Court envisioned jury instructions as an appropriate remedy that is shy of suppression.

In Defendant's pretrial motion, he argued that, as an alternative to suppression, "[a]nother way of enforcing [the VCCR] would be to allow [Defendant] to argue [that his] statements go to the weight the [j]ury may assign to the [s]tatements after informing the [j]ury that the [s]tatements were obtained in violation of [D]efendant's right to speak to his consulate or to be informed by the [p]olice of his right under the VCCR."

"Generally, to preserve error on a trial court's refusal to give a tendered instruction, the [a]ppellant must tender a legally correct statement of the law." *State v. Jernigan*, 2006-NMSC-003, ¶ 10, 139 N.M. 1, 127 P.3d 537 (filed 2005). "However, if the record reflects that the judge clearly understood the type of instruction the [d]efendant wanted and understood the tendered instruction needed to be modified to correctly state the law, then the issue is deemed preserved for appellate review." *Id.* From the record, it is not clear to this Court whether Defendant was requesting a jury instruction or if he was requesting permission to argue the weight of Defendant's statements. *See* UJI 14-5020 NMRA ("You alone are the judges of the credibility of the witnesses and the weight to be given to the testimony of each of them."). Nor is it clear that the district court clearly understood the type of instruction

Defendant wanted tendered, if any at all. *Cf. State v. Munoz,* 2006- NMSC-005, ¶ 12-13, 139 N.M. 106, 129 P.3d 142 (holding that the defendant's objection was preserved when he submitted a definition to the court and objected to the proposed instructions that were ultimately used). Defendant's motion requested that he be allowed to argue to the jury the weight that it may assign his post-arrest statements. This is not a request for a jury instruction, nor does it substitute for tendering a jury instruction. The record does not reveal that the district court understood this as a request for a jury instruction, and the issue was not revisited after the close of evidence at the jury instruction conference. We therefore conclude that this issue was not preserved.

**3.      Voluntariness Determined by Juvenile Standards**

It is Defendant's contention that because he is a foreigner, a heightened level of protection should have been triggered when the district court evaluated the voluntariness of his statements, and there should have been a presumption that any statements made or rights waived were not done so knowingly, intelligently, or voluntarily. As we have already noted, Defendant never argued below that his statements were involuntarily given, and there has been no demonstration that would indicate that the facts or circumstances surrounding his statements were coercive. Additionally, this issue has been addressed by our Supreme Court. *See State v. Barrera*, 2001-NMSC-014, ¶ 24, 130 N.M. 227, 22 P.3d 1177. In that case, the Court

held that the defendant's assertion that foreign citizens are entitled to the enhanced standard of a juvenile to measure voluntariness of their statements was not supported by case law and was without merit. *Id.* Likewise, Defendant cites no authority that supports his assertion that an adult foreign national is entitled to greater protection than other adults in the criminal justice system. This issue was not preserved, nor does the contention have merit.

**4.      The Treaty of Guadalupe Hidalgo**

In his brief, Defendant argues that the admission of his post-arrest statements violated the rights of his co-defendant, Camacho, a Mexican citizen, under the Treaty of Guadalupe Hidalgo and, therefore, should have been suppressed in the joint trial. Essentially, Defendant is advocating for the rights of his co-defendant and arguing that the violation of Camacho's rights led to the admission of Defendant's statements which, in turn, damaged Defendant. We understand Defendant to imply that he would have benefitted from the preservation of his co-defendant's rights. Before we examine the merits of this claim, we inquire as to how Defendant can assert the rights of his co-defendant.

The joint pretrial motion, which both co-defendants submitted, mentions the Treaty of Guadalupe Hidalgo. However, the section of the motion that Defendant cites to in his brief falls under the following sub-heading:

> RIGO CAMACHO, A CITIZEN OF MEXICO, ASSERTS THAT ARTICLE II, SECTION 5 OF THE NEW MEXICO BILL OF RIGHTS DICTATES THAT THIS COURT ACTUALLY ENFORCE THE [VCCR] IF A STATEMENT OBTAINED BY THE STATE IN VIOLATION OF [THE VCCR] IS USED AGAINST A CITIZEN OF MEXICO IN A NEW MEXICO COURT PROCEEDING.

(Emphasis omitted.) Thus, the entire section refers to his co-defendant's claim that under the Treaty of Guadalupe Hidalgo, the district court "is obliged to suppress any statement used against . . . *Camacho*," not Defendant. (Emphasis added.) Although Defendant was a party to this joint motion, this section of the motion specifically refers to citizens of Mexico to which the Treaty of Guadalupe Hidalgo applies and to Camacho.

Second, Defendant has not explained how he has standing to make this claim. "Generally, one may not assert the constitutional rights of another." *Gunaji v. Macias*, 2001-NMSC-028, ¶ 20, 130 N.M. 734, 31 P.3d 1008. However, this maxim is subject to exception when considered by "countervailing policies," such as situations where the rights of an individual, who is not a party to the action, would be impaired and that third person has no effective way to preserve those rights for himself. Id. In this case, Camacho was capable of preserving this issue for himself. He is not a party to this appeal, and this situation does not involve him appealing his own conviction. In light of Defendant's failure to fully develop how he may assert the rights of another and our review of the pretrial motion, we will not address this issue further.

11

**B.     Prior Bad Acts**

Defendant argues for a new trial because testimony was developed that tended to show he had committed acts of domestic violence against Moe and Angela. We examine the situations surrounding both witnesses. "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72.

**1.     Donald Moe**

At trial, Camacho's counsel suggested, during opening statements, that Moe's actions were suspicious, and the authorities should have considered him a suspect in the victim's death. Defendant's counsel did not make an opening statement. During Moe's testimony, the prosecutor inquired about how Defendant came to be living with Angela on the property. Moe spontaneously responded that when Defendant began sleeping with Angela, Moe did not approve. Further, Moe tried to "chase" Defendant, but instead was severely beaten by him. Defense counsel moved for a mistrial at a bench conference. The prosecutor explained that such testimony was going to be brought out eventually to explain why Moe was afraid of Defendant and did not like him, and why he did not call the police for four years. The district court decided to reserve ruling on the motion, depending on what transpired in further testimony.

12

Subsequently, after having his memory refreshed, Moe testified that the reason that he did not call the police in 2002 after being told by Trujillo that there was a body on the property was because he was afraid of Defendant. When asked what his basis was for that fear, Moe responded, without objection from defense, that Defendant had severely beaten him in 2001. On cross-examination, defense counsel elicited further testimony from Moe and had him describe in detail the beating that Defendant had inflicted upon him.

Defendant maintains that evidence of violence towards Moe was irrelevant and overly prejudicial and, further, the objectionable portions of the testimony were not consistent with any legitimate purpose. We conclude that this issue was not preserved. No ruling on Defendant's request for a mistrial was given, and Defendant did not renew his objection or his motion for a mistrial. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (preserving an issue for appeal requires a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon). On cross-examination, defense counsel actually developed Moe's testimony regarding the beating. It would appear that trial counsel's strategy was to cast doubt on Moe's credibility, emphasize his bias, and imply that he was a valid suspect in the murder. The record shows that defense counsel pursued lines of questioning that discussed Moe's mental illness, drug

use, his participation or knowledge regarding drug dealing, whether he had ever stabbed anyone, and why he was not a suspect in the murder. Overall, it appears it was trial counsel's scheme to develop this testimony and, thus, no renewed objection was made.

2.	Angela Moe

During trial, Angela testified about the night the stabbing took place. She then testified about Defendant's statements, which she overheard, regarding the murder and the subsequent threats Defendant made to her, stating that he would kill her if she told anyone what she heard. Angela stated that she believed Defendant's threats because he had hit her in the past, broken her nose and teeth, and threatened to kill her. Defendant did not object to this testimony.

On appeal, Defendant insists that this testimony was collateral and irrelevant to the case, and its only purpose was to demonstrate to the jury that Defendant was a bad person with a propensity to commit crimes. We fail to see how this issue was preserved. Defendant's brief does not cite to where trial counsel objected to this testimony, and we are unable to locate it. *See* Rule 12-213(A)(4) NMRA (stating that briefs submitted to this Court "shall contain a statement of the applicable standard of review, the contentions of the appellant *and a statement explaining how the issue was preserved in the court below*, with citations to authorities, record proper, transcript of

14

proceedings or exhibits relied on" (emphasis added)); *State v. Rojo*, 1999-NMSC-001, ¶ 44, 126 N.M. 438, 971 P.2d 829 (filed 1998) (holding that appellate courts will not search the record to find whether an issue was preserved where the defendant did not refer the court to appropriate transcript references). The lack of objection below means that the issue was not preserved.

**C.    Jury Instructions**

After the conclusion of testimony, Defendant requested jury instructions on self-defense and voluntary manslaughter. Both requests were denied. Defendant now appeals the district court's decision. Review of the denial of a tendered instruction is conducted de novo. *State v. Rudolfo*, 2008-NMSC-036, ¶ 13, 144 N.M. 305, 187 P.3d 170.

**1.    Self-Defense**

At the jury instruction conference, defense counsel argued that the videotape of Defendant's post-arrest statements, which was played in totality to the jury at Defendant's request, contained statements by Defendant that Chino stabbed the victim in self-defense, and then coerced both co-defendants to help him bury the body. Defendant additionally notes that Trujillo testified that, although she did not see anything on the night in question, there was some kind of a fight or disturbance in one of the mobile homes while she and Angela were in the neighboring mobile home. On

15

appeal, Defendant argues that this "slight evidence" is sufficient to grant the instruction.

To be entitled to a self-defense instruction, evidence must be developed at trial that would support the giving of the instruction as to every element of the defense. *Id.* ¶ 17. This requires a showing in the record that "(1) the defendant was put in fear by an apparent danger of immediate death or great bodily harm; (2) the killing resulted from that fear; and (3) the defendant acted reasonably [in killing the victim]." *Id.* (internal quotation marks and citation omitted); UJI 14-5183 NMRA. The evidence in the record does not establish the required elements of the defense. As the district court observed below, a post-arrest statement from Defendant that Chino killed in self-defense does not apply to Defendant. The remaining evidence presented at trial showed instead that Defendant had bragged about participating in the killing. As for Trujillo's testimony about a fight or disturbance in the neighboring mobile home, that argument does not establish fear of immediate danger, reasonableness in killing, or killing in response to that fear. *See* UJI 14-5183. Trujillo testified that she did not see any of the events occur in the neighboring mobile home and that, after the killing, Camacho merely told her that there had been a fight and a stabbing without any further details about who did what or why. The evidence presented at trial was insufficient to entitle Defendant to a self-defense instruction.

16

## 2. Voluntary Manslaughter

In his brief, Defendant argues that he was entitled to a voluntary manslaughter instruction because (1) the men involved in the incident had consumed four, thirty packs of beer and had been drinking Bacardi; (2) there was tension and an argument because the victim would not purchase more beer; and (3) something triggered Chino and subsequently Defendant to stab the victim. As an initial matter, this Court is unable to locate testimony in the record that "the men had four 30 packs of beer and Bacardi to drink," and Defendant does not provide a citation for this contention. Additionally, the State argues that no such testimony about the quantity of alcohol consumed was presented at trial. We additionally note that voluntary intoxication is a defense to a specific intent crime. *State v. Nozie*, 2009-NMSC-018, ¶ 41, 146 N.M. 142, 207 P.3d 1119. Voluntary intoxication will not provide a defense to a general intent crime which requires only a "conscious wrongdoing." *State v. Brown*, 1996-NMSC-073, ¶ 22, 122 N.M. 724, 931 P.2d 69 (internal quotation marks and citation omitted). New Mexico has consistently held that "specific intent is not required for conviction in second degree murder, thus explaining why voluntary intoxication is no defense to such a charge." *State v. Tapia*, 81 N.M. 274, 276, 466 P.2d 551, 553 (1970). Therefore, "[i]ntoxication of the defendant at the time of the killing . . . cannot be said to furnish the provocation required to reduce murder in the

17

second degree to voluntary manslaughter." *State v. Cooley*, 19 N.M. 91, 102, 140 P. 1111, 1114 (1914).

The difference between murder in the second degree and voluntary manslaughter is sufficient provocation. *See* UJI 14-220 NMRA. Sufficient provocation is defined as:

> any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions. The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition. The "provocation" is not sufficient if an ordinary person would have cooled off before acting.

UJI 14-222 NMRA.

Angela testified that the men present had an argument about who would buy more beer. However, at the time of the killing, sometime later that evening, she was next door and had no way of knowing what the actual circumstances were. This is insufficient evidence to fall within the definition of "sufficient provocation." As the district court pointed out, it is purely speculative to state what transpired next door, let alone that there was sufficient provocation.

**D.    Intimidation of a Witness**

The criminal information filed against Defendant stated that intimidation of a witness occurred between 2002 and 2006. As an unpreserved issue, it is Defendant's contention that this Court should review for fundamental error the fact that the district

court did not dismiss or conduct "an adequate inquiry into[] the intimidation of a witness charge based on the overbroad . . . date range of between September 2002 and September 2006." Fundamental error applies "in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Baca*, 1997-NMSC-045, ¶ 41, 124 N.M. 55, 946 P.2d 1066, *overruled on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783.

Citing to *State v. Baldonado*, Defendant encourages this Court to analyze the constitutionality of the charging period and determine whether the State could have reasonably provided a greater specificity for times of the alleged intimidation and, if so, whether that failure prejudiced Defendant. 1998-NMCA-040, ¶ 29, 124 N.M. 745, 955 P.2d 214. In *Baldonado*, the defendant was charged with criminal sexual contact of a minor. *Id.* ¶ 3. The indictment stated that the crimes occurred during a two-year period. *Id.* ¶ 4. The defendant filed a motion for bill of particulars, requesting more specificity for the approximate time that the alleged criminal acts occurred. *Id.* This Court noted that the defendant may or may not have had an alibi depending on the time of the alleged offense. *Id.* ¶¶ 5-6. We concluded that no per se rule based on time of the charging period should be adopted, but instead district courts should look at each situation on a case-by-case basis and conduct their analysis in light of nine,

mutually exclusive factors. *Id.* ¶¶ 23, 26-28, 30. However, we also stated that the analysis depended upon "the nature of the challenge asserted by the defendant," implying that the district court's factual development of the issue should be responsive to the defendant's challenge. *Id.* ¶ 28 (internal quotation marks and citation omitted). Sometime later, the Court held that a defendant must preserve a challenge to the reasonableness of the state's efforts to narrow the time frame for the crimes charged in the indictment. *State v. Nichols*, 2006-NMCA-017, ¶¶ 26-30, 139 N.M. 72, 128 P.3d 500 (filed 2005). One reason for this is that each fact-specific inquiry requires a careful weighing of the evidence within the context of the claimed defense or error, such as the possibility of an alibi. *See id.* ¶ 30. Without a claim of a plausible defense or a developed record, "it would be inappropriate for us to analyze this issue." *Id.* Such is the case here.

**E.      Sufficiency of the Evidence**

Defendant next argues that there was insufficient evidence to convict him of second-degree murder. He argues that (1) Moe, Angela, and Trujillo were biased and non-credible witnesses; (2) there was no witness to the murder or physical evidence linking Defendant to the murder; and (3) reasonable doubt existed because of a failure to collect evidence. We will address each claim. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict,

indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

Defendant's first request is for this Court to review the testimony of the witnesses in this case and conclude that because they were biased, their testimony lacked credibility and, therefore, the remaining evidence was insufficient to support a conviction. This is a request that we cannot oblige. Our function is not to reweigh evidence or evaluate the credibility of witnesses. *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789 ("The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict."). It is the role of the jury to judge witnesses, determine their credibility, and assign weight to the evidence. *State v. Marquez*, 2009-NMSC-055, ¶ 17, 147 N.M. 386, 223 P.3d 931.

We agree with Defendant that his conviction was based on testimony from witnesses and not from physical evidence linking him to the murder. However, Angela testified that Defendant had told her of his involvement in the murder, and she had overheard Defendant on multiple occasions bragging to other individuals about his role in the murder. Additionally, Defendant's post-arrest interview was played in its entirety for the jury. Defendant has not provided this Court with a copy of that

evidence, so we can only surmise what Defendant told officers during that interview and what the jury inferred. *See Reeves v. Wimberly*, 107 N.M. 231, 236, 755 P.2d 75, 80 (Ct. App. 1988) ("Upon a doubtful or deficient record, every presumption is indulged in favor of the correctness and regularity of the trial court's decision, and the appellate court will indulge in reasonable presumptions in support of the order entered."). However, Defendant does admit in his brief that, at some point during the interview, he admitted to being present on the night of the killing and to helping dispose of the body. Defendant's own words place him at the scene of the crime. Further analysis on our part, as to whether we believe Defendant or Angela, would surely result in a reweighing of evidence.

Finally, Defendant claims that he is entitled to sufficient information to enable him to properly prepare his defense. He argues that because the identity of the victim, believed to be a Mexican citizen, was never discovered, and no date of the incident was accurately pinpointed, the victim's character and propensity for violence could not be established and, therefore, Defendant was prevented from adequately defending himself. This argument has no merit. A challenge to evidence in support of conviction on sufficiency grounds is unrelated to whether a precise bill of particulars was provided to Defendant. We will, however, discuss this issue.

22

Defendant states that he was prejudiced by law enforcement's failure to collect material evidence, and he cites to *State v. Ware*, 118 N.M. 319, 881 P.2d 679 (1994), for the proposition that failure to collect evidence may amount to suppression of material evidence. In that case, our Supreme Court noted that it would be a potential due process violation if the state failed to collect evidence from a crime scene or provide evidence to a defendant requesting it, or lost the evidence or destroyed it. *Id.* at 322-23, 881 P.2d at 682-83. The defendant was challenging the manner in which the evidence was collected. *Id.* at 321, 881 P.2d at 681. The court determined that the defendant must first show that the missing evidence was important to the defense and that the investigating officers acted in bad faith or were negligent in failing to obtain evidence. *Id.* at 325, 881 P.2d at 685. Defendant does not articulate how any missing evidence would be important to his defense in light of other facts before the jury, nor does he demonstrate how the investigating officers were negligent or acted in bad faith. Without more development, this Court is left to speculate on an issue that was not raised below.

## F.  Ineffective Assistance of Counsel

There is a general presumption that trial counsel provided effective assistance. *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289.  To establish a claim of ineffective assistance of counsel, the burden is on the defendant to show the counsel's performance was deficient, and this deficiency prejudiced his defense. *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61.  A defense counsel's performance is deficient if "representation fell below an objective standard of reasonableness." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 26, 130 N.M. 198, 22 P.3d 666) (internal quotation marks and citation omitted).  To establish prejudice, the defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Schoonmaker*, 2008-NMSC-010, ¶ 32, 143 N.M. 373, 176 P.3d 1105 (internal quotation marks and citation omitted).

> When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record.  If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance.

*Roybal*, 2002-NMSC-027, ¶ 19.

Defendant makes three claims regarding ineffective assistance of counsel in the context of his attorney failing to file motions.  First, he maintains a motion should

have been filed, severing the intimidation of a witness charge from the murder charge. Second, a motion requesting a bill of particulars more narrowly specifying the date range of the intimidation of a witness charge should have been filed. Finally, a motion should have been filed, requesting suppression or admonishment regarding his use of illegal drugs. We do not agree.

The State correctly responds that the failure to request severance of the intimidation of a witness charge does not establish ineffective assistance of counsel. Moe's testimony regarding domestic abuse was admitted to show why the police did not become involved for four years. The State additionally proposes that Defendant's treatment of Angela's testimony, regarding Defendant's domestic abuse, was part of Defendant's trial strategy to show that both Angela and Moe had a motive to fabricate their testimony about Defendant's involvement in the murder. This case does appear to have been a credibility contest between Defendant and Angela. Defendant's own statement to officers placed him at the scene of the murder and made him appear complicit, if not culpable, in hiding the body and tampering with evidence. The question for the jury was whether they believed Angela or whether they believed Defendant. As a question of credibility, we recognize that it was imperative that Defendant challenge Angela's truthfulness at trial. In closing, defense counsel argued that Angela was biased and hated Defendant because he had beaten her in the past.

25

In totality, it does appear that trial counsel repeatedly made attempts to demonstrate Angela's prejudice and motives to lie. "On appeal, we will not second guess the trial strategy and tactics of the defense counsel." *Lytle*, 2001-NMSC-016, ¶ 43 (internal quotation marks and citation omitted). A prima facie case is not made when there is a plausible and rational strategy or tactic to explain the conduct of counsel. *State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct. App. 1992). Further, we presume that trial counsel was competent. *State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127.

Defendant's claim that trial counsel should have filed a motion for a bill of particulars, in regard to the intimidation of a witness charge, is likewise without merit. Knowledge of the exact date or a more narrow charging period for the witness intimidation charge would not have helped Defendant in challenging Angela's credibility. Angela testified as follows:

> [Defendant] said if I ever said anything that he would kill me. And that was not the first time. He would always threaten me and get a knife and tell me that he didn't love me, that he didn't care, that he was only with me for the kids, that it wouldn't take him nothing to kill me and bury me wherever, that he didn't care.

In this particular case, the intimidation could conceivably have been the entire four-year period, beginning with the night of the incident, and ending when the police ultimately found and confronted Angela with the fact that a body was found on the

26

property where she used to live. This, combined with our agreement that Defendant was not prevented from challenging Angela's credibility, leads us to conclude Defendant has not demonstrated that his counsel's failure to request a bill of particulars, in regard to the intimidation of a witness charge, has resulted in a deficiency that prejudiced Defendant.

Finally, Defendant also claims that trial counsel's failure to file a motion, which requested suppression or admonishment to the jury upon hearing evidence that Defendant used illegal drugs, rises to the level of ineffective assistance. While on the witness stand, Angela was asked by defense counsel whether Defendant was working in 2002. Angela responded: "No. He never used to work, just for his drug habit." Defense counsel did not object and did not request an instruction from the court admonishing the jury. However, failure to object does not establish ineffective assistance. *State v. Peters*, 1997-NMCA-084, ¶ 40, 123 N.M. 667, 944 P.2d 896. The decision about whether to object to evidence is a matter of trial tactics. *Id.* As we have stated, the record demonstrates that there was a concerted effort to establish various reasons that the witnesses had to dislike Defendant. That strategy is clearly within the purview of trial counsel. This Court will not evaluate defense counsel's trial strategy and tactics. *State v. Gonzales*, 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992).

**III.    CONCLUSION**

For the reasons stated above, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**JONATHAN B. SUTIN, Judge**